BERRY *vs.* GRIFFITH.—June, 1828.

A sheriff has a right, and it is his duty, in due time to correct his return to a *fieri facias*, so as to make it conform to the truth of the fact, whatever that may be, and to give it effect and legal operation.

It is not true, that land when taken in execution, must be described in the schedule returned with the writ and advertisement, of its intended sale, with technical minuteness.

A sheriff cannot sell what has not been levied upon under the *fi. fa.* but a general description in the schedule returned with the writ, and in the advertisement of sale, is sufficient.

The return should regularly, for the security of purchasers, describe the premises with precision; but it is enough, if the description be such, as that the property may be clearly identified.

A sheriff's return to a *fieri facias*, that he had laid it on all that part of the tract of land lying in *M* county, called C, which was devised to the said B, (the defendant in the writ,) by his father R, to the value of, &c. that after having given due and public notice, of the time, place, manner, terms, and cause of sale, he did on, &c. expose to sale the said part of the said tract of land which lies on the N W side of the public road leading from R, in *M* county, to B, containing 242 acres, and that G, then and there became the highest bidder and purchaser of the said last mentioned part of the tract or parcel of land, for the sum of $2,000, which he had paid to the sheriff, shows a valid sale by the sheriff.

A sheriff may divide, and sell a part of the premises levied upon, and advertised, and where that will satisfy the debt, he ought to sell no more.

APPEAL from *Montgomery* County Court. This was an action of trespass *q. c. f.*—for breaking and entering the close of the plaintiff, (the appellant,) called *Charles and Benjamin.* The defendant, (the appellee,) pleaded not guilty, and issue was joined.

At the trial the plaintiff proved by a competent witness, that he, the plaintiff, had held the land and premises in the declara-

tion mentioned, under the will of his father, always since the
death of his father, until the time of the sale hereinafter men-
tioned.   And the plaintiff read in evidence the will of his
father, *Richard Berry*, and proved the same.   By which will,
dated the 26th of August 1818, the testator devised to his son
*Elisha D. Berry*, (the plaintiff,) and his heirs, all the remain-
der of his tract of land called *The Charles and Benjamin*,
not devised to his daughter *Deborah*.   The will was proved
on the 30th of November 1819.   The plaintiff further proved
by a competent witness, that the defendant had, after the pur-
chase and sale by the sheriff, as hereinafter stated, directed one
*John Thomas* the 3d, to cut timber trees on that part of said
land, so before sold, as mentioned and described in the return
of the sheriff hereinafter stated, and that the said *Thomas* had
accordingly cut and removed them therefrom.   The defendant,
for the purpose of proving the title and possession of the said
land in himself, produced and offered to read the following re-
cords and papers, viz.   A record of a judgment recovered in
*Montgomery* county court in March 1820, in the name of *Wil-
liam Willson*, and *Anna Maria Willson*, his wife, against
*Elisha D. Berry*, for $124 88¼ debt, $300 damages and costs.
The damages to be released on payment of interest on the debt
from the 19th of June 1816.   This judgment was superseded by
confession of judgment entered into by *Elisha D. Berry*, with
*Jannaro S. Farre* and *Alexander Young*, on the 22d of
February 1821, before one of the Associate Justices of the or-
phans court of the said county.   Upon this confession of judg-
ment a writ of *fieri facias* issued on the 4th of March 1822,
against B*erry*, and his sureties.   The sheriff returned the *fieri
facias*, that he had laid it on all that part of the tract of land
lying in *Montgomery* county, called *Charles and Benjamin*,
which was devised to the said *Elisha D. Berry* by his father
*Richard Berry*, to the value of $6,000.   That after having
given due and public notice of the time, place, manner, terms,
and cause of sale, he did on the 13th of August 1822, expose
to sale the said part of the said tract of land which lies on the N
W side of the public road leading from *Rockville*, in *Mont-
gomery* county, to the city of *Baltimore*, supposed to contain
250 acres more or less, but found on an accurate survey thereof,

by the surveyor of *Montgomery* county, to contain 242¾ acres, as will appear by the plot annexed and returned. That at the said sale *Henry B. Griffith* and *Richard H Griffith*, then and there became the highest bidders and purchasers of the said last mentioned part of a tract or parcel of land, at and for the sum of $2,000, and which sum they had paid to the sheriff. *Berry* moved the court to quash the *fieri facias*, assigning certain reasons, which motion the court overruled. The defendant also proved by several competent witnesses, that the land in the declaration mentioned, is the same land which is mentioned in the return of the sheriff above, and that the said land was sold by the sheriff of *Montgomery* county at public sale, and that the defendant became the purchaser thereof, as stated in the amended return of said sheriff. That the plaintiff was present at the said sale, and that it was at his request that the part of the land taken under the said execution, and so sold by the sheriff, was exposed to sale. That the plaintiff made no objection to the said sale, and that the defendant and *Henry B. Griffith*, then paid the purchase money to the sheriff, and the plaintiff thereupon paid a balance remaining unsatisfied of the executions in his hands of nine or ten dollars to the sheriff. That the day after the said sale the defendant, and his co-purchaser *Henry B. Griffith*, engaged one *Washington Owen* to enter upon the said land, (there being no house or enclosure thereon,) and take charge of the same, and directed him to authorise one *John Thomas* to cut down wood, and enclose the fields on the said land, which he did. And that the said land had always been held, and considered as a part of the dwelling plantation of the plaintiff, until the said sale. That after the said *Thomas* had cut down the said trees, the plaintiff called upon him to know by what authority he had so cut them, and *Thomas* replied on the authority of the defendant. The plaintiff replied that was all he wanted to know. The witness thinks *Thomas* went on to cut some trees after the plaintiff had so called upon him, and carried those he had previously cut down, to the field which he enclosed with them on said land. That the said *Thomas* did enclose and cultivated said fields, and that the defendant, and the said *Henry B. Griffith*, have continued in such possession of said land so purchased, ever

since. But the said witnesses proved that they had no knowledge, except what is above stated, of the defendant or *Henry B. Griffith,* (his co-purchaser,) having been in possession of said land, and that they supposed he had possession in consequence of his authority given to said *Thomas* to cut wood. The said *Thomas* had, before the said sale, by the leave of the plaintiff, taken down wood from said land for firewood. And the plaintiff further offered the record of an action of ejectment brought by the defendant against the plaintiff. This record sets forth an action of ejectment brought by *Henry B. Griffith* and *Richard H. Griffith's* lessee, against *Elisha D. Berry,* on the 23d of December 1822, for a tract of land called *Charles and Benjamin,* as described in the sheriff's return before mentioned, containing 250 acres. Which said action was entered, on the 10th of November 1825, "off by plaintiffs." The plaintiff further proved by *Richard Butt,* a competent witness, and the deputy sheriff who made the sale, that there was land included in the sheriff's amended return which was not sold under the said execution to the defendant, but that the land on which the alleged trespass is said to have been committed, was sold as aforesaid. And the defendant proved by four competent witnesses, that all the land mentioned in the sheriff's return was sold as stated in the said return; and produced the receipt of said *Butt* to prove the same fact: "Received, August 13th, 1822, from *Henry B. Griffith* and *Richard H. Griffith,* two thousand dollars, for all the land lying on the north west side of the *Baltimore* road, called *Charles and Benjamin,* late the property of *Elisha D. Berry,* sold by virtue of a writ of *venditioni exponas,* at the suit of W*illiam Scott,* and a writ of *fi. fa.* at the suit of W*illiam Willson,* and *Anna Maria* his wife.

       E E  *Rich'd. Butt,* for
  W*illiam Clements,* Shff. of *Montgomery* County."

And the plaintiff, in order to prove the irregularity of said sale, offered the following papers marked B, one of which is admitted to be the inventory and appraisement, one the advertisement of sale, and the other a return which the sheriff had prepared and filed, and which was supplied by the amended return offered by the defendant, and which are as follow, viz.

The appraisement was of "part of a tract of land called *Charles and Benjamin*, containing 500 acres of land more or less, valued at $6,000." The advertisement dated the 22d of July 1822, (certified to have been published in the *Rockville True American* for 21 days before the day of sale,) stated that the sale would be at the residence of *Elisha D. Berry* on the 13th of August then next for cash only, the following property, to wit: All the right, title, interest and estate, of *Elisha D. Berry*, of, in and to, part of a tract of land called *Charles and Benjamin*, containing 500 acres more or less, taken by virtue of a writ of *fi. fa.* issued from *Montgomery* county court, at the suit of W*m. Willson* and wife, &c. A list of sales of the lands, &c. of *Elisha D. Berry*, sold under two writs of *fi. fa.* one at the suit of W*illiam Scott*, and the other at the suit of W*illiam Willson* and wife, the 13th of August 1822, "part of a tract of land called *Charles and Benjamin*, lying on the N W side of the *Baltimore* road, containing 250 acres more or less—*Jno. Thomas*, 3d. (To be sold in 30 min. if not complied with,)

$2405

2d. *Deborah D. Berry* (do. in 10 min. do.)      2100

3d. *H. B. & R. H. Griffith* (do. 10 do. Pd. by *H. B. & R. H. G.)*      2000"

Upon the evidence aforesaid the plaintiff prayed the court to instruct the jury that the defendant and *Henry B. Griffith* derived no title to the said land under the said sale, and that the plaintiff is entitled to recover. Which instruction, so as aforesaid prayed, the Court [*Kilgour* and W*ilkinson*, A. J.] refused to give to the jury. The plaintiff excepted; and the verdict and judgment being for the defendant, the plaintiff appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, and ARCHER, J.

*Magruder*, for the Appellant, contended, that the court below erred in refusing the instruction to the jury as asked for by the plaintiff—1. Because the plaintiff's possession of the land entitled him to recover upon the evidence in the cause. 2. Because the proceedings of the sheriff under the *fieri facias*

in the record produced by the defendant, and the sale made by him of the land upon which the trespass was committed, were illegal and void. If the sheriff's seizure of property is not correct, he cannot afterwards make it correct. He must advertise and sell the property in conformity to his seizure. He cannot, if he advertised that the whole of a tract of land was to be sold, sell only a part of the tract. He cited *Sheldon v Soper*, 14 *Johns. Rep.* 352. *Jackson v Stricker*, 1 *Johns. Cas.* 284.

*F. S. Key*, for the Appellee. Can it be improper for a sheriff to sell a part of a tract of land, instead of the whole tract, when by a sale of a part the debt will be made? Why cannot the sheriff accommodate purchasers by dividing the tract, and selling it in parcels? Suppose a sheriff levies a writ of *fieri facias* on personal property, and advertises to sell the whole, can he not sell only a part, and in parcels, if by such sale he raises a sum sufficient to discharge the debt? In this case the land sold lay on the N W side of the road. The whole tract was divided into two parts by a tract running in between the whole tract.

*Magruder*, in reply. The sheriff's original return was incorrect, and he had no right afterwards to correct it, by stating in his amended return expressions which were not used in the schedule returned by him. The schedule returned with the writ, and the advertisement of the land to be sold, differ from the expressions used in the special return as amended.

BUCHANAN, Ch. J. delivered the opinion of the court. This was an action of trespass for cutting down trees in a close, alleged to be the close of the appellant, who was the plaintiff below.

The appellant claims title to the land on which the trees were cut, under a devise from his father; and the defendant rests his defence upon a purchase of the same premises by himself and *Henry B. Griffith*, from the sheriff of *Montgomery* county, at a sale by auction, in virtue of a *fieri facias* regularly sued out of the *Montgomery* county court. And the s le question presented to us in argument is, whether the sale made

by the sheriff of the land on which the trespass is supposed to have been committed was a valid sale?

To prove that the sale was irregular and void, the appellant offered in evidence the inventory and appraisement, in which the land upon which the *fieri facias* was levied, is described as "part of a tract of land called *Charles and Benjamin*, containing five hundred acres of land more or less," valued at $6,000. The sheriff's advertisement of sale, which is of "all the right, title, interest and estate, of the said *Elisha D. Berry*, of, in and to, part of a tract of land called *Charles and Benjamin*, containing five hundred acres more or less," both of them stating it to be taken by virtue of a writ of *fieri facias* at the suit of *William Willson*, and *Anna Maria* his wife. And also a paper, which it is admitted was prepared and filed by the sheriff as his return to the *fieri facias*, and in which the land sold is described as "part of a tract of land called *Charles and Benjamin*, lying on the north west side of the *Baltimore* road, containing two hundred and fifty acres more or less." And all of them describing it as the land of *Elisha D. Berry*. And the defendant produced a corrected return by the sheriff, of the *fieri facias*, on the return day of the writ. That corrected return is full and special, and sufficiently describes the land sold, and entirely supersedes the paper that was first prepared by the sheriff as his return; which paper, if admitted to be imperfect as a return, cannot avail the appellant, as it will not be denied, that a sheriff has a right, in due time, to correct his return to a *fieri facias*, so as to make it conform to the truth of the fact, whatever that may be, and to give it effect and legal operation; and indeed, it is his duty to do so, not only as respects himself, but all others concerned, and purchasers not less than others, who commit themselves to the accuracy and integrity of sheriffs.

In this case it is not denied, that the correction was in time; nor is it contended, that the return, standing alone, is upon the face of it defective, but it is supposed that there are discrepancies between the return, the inventory and appraisement, and the advertisement of sale, which vitiate the whole proceedings, and render the sale void. With respect to certainty in the descrip-

tion of the property, we do not perceive the fatal discrepancies that are supposed to exist. The corrected return describes the land levied upon, as the property of *Elisha D. Berry*, to be "all that part of the tract of land called *Charles and Benjamin*, which was devised to *Elisha D. Berry* by his father," with a reference to the will, and states the amount, to which it was appraised, to be $6,000, referring also to the schedule or inventory. Between the description then of the land levied upon, as given in the return, and the inventory and appraisement, there is no discrepancy, but the land clearly appears to be identical. In the latter, it is described as part of a tract of land called *Charles and Benjamin*, the property of *Elisha D. Berry*, containing five hundred acres more or less, and appraised to $6,000. In the former, as all that part of the tract of land called *Charles and Benjamin*, belonging to *Elisha D. Berry*, which was devised to him by his father, stating the amount of the appraised value to be the same as that set out in the inventory and appraisement, and showing, by the reference to that paper, (which is made a part of the return,) the quantity of acres to be the same. The only difference being this, that the return professes to show in what manner *Berry* acquired title, by reference to his father's will, which the inventory does not. But the two papers manifestly show the land devised to *Berry* by his father, and the land levied on to be the same; and the same may be said of the advertisement of sale, which is of all the right, title, interest and estate, of *Elisha D. Berry*, of, in and to, part of a tract of land called *Charles and Benjamin*, containing five hundred acres more or less, taken by virtue of a writ of *fieri facias*, at the suit of *William Willson* and *wife*. This paper does not, to be sure, set out the means by which *Berry* acquired title, but it describes the land seized under the *fieri facias*, as the property of *Berry*, by its name and contents, as it is described in the other two papers. And it is difficult to wink so hard, as not to see, that they all manifestly relate to the same land, and describe it with sufficient certainty. But it is not true, that lands taken in execution, must be described in the schedule and advertisement of sale, with technical minuteness. If it were so, it would per-

haps be found that there are few titles in the state, acquired by purchase at sheriffs sales, that might not be shaken. The sheriff cannot sell what has not been levied upon, but a general description in the shedule and advertisement of sale is sufficient. The return should regularly, for the security of purchasers, describe the premises with precision; but it is enough if the description be such as that the property sold may be clearly identified. In this case, the land sold was a part of the premises levied upon and advertised, and that part is described in the sheriff's return, in a manner by which it may be sufficiently known and ascertained. But it is contended, that the sale was void, because a part only of the premises seized and advertised was sold, on the ground that the sheriff was not legally authorised to sell a part only, but was bound to sell the whole of the land levied upon. We cannot, however, assent to the proposition. Sheriffs, it is believed, are already sufficiently disposed to sell more than is necessary; and it would be pregnant with mischief to the community, if a sheriff, who lays an execution for $100, on a tract of land worth $10,000, should be held to be obliged to sell the entire tract, and could not sell such part as might be sufficient to discharge the debt. On the contrary, we think, that in such a case the sheriff is not only authorised to lay off and sell such a proportion of the land as may be found sufficient to satisfy the debt, but that he ought to do so, and not to sacrifice at auction more than may be found necessary. Or suppose a sheriff having taken in execution an entire tract of land, finds it will sell to a greater advantage if divided and sold in lots, than if sold altogether; and accordingly lays it off into lots, and sells them separately to different persons; would it, in such a case be said, that the sale of each lot would be void, because the sale of neither was a sale of the whole? And yet the doctrine contended for here, if maintained, would lead to that length.

We can perceive nothing wrong in the sale and return in this case, and affirm the judgment.

JUDGMENT AFFIRMED.