(Decided 30th January, 1873.)

WILLIAM A. JARBOE, JR. *vs.* WILLIAM W. HALL, THOMAS PARKER, and others. WILLIAM W. HALL, and others *vs.* WILLIAM A. JARBOE, JR.

*When a motion to amend a Sheriff's return is not too late—Right of a Sheriff to correct his return to a Fieri Facias—How a Defect in a Sheriff's schedule of property may be cured—When a Sheriff will not be allowed to amend his Schedules and Returns—Effect of irregular and defective Schedules and Returns.*

Upon the return of sundry writs of *fieri facias,* at October Term, 1869, of the Circuit Court, motions were made by the defendants and others in interest to quash the several writs and the levies thereunder, and to set aside the sale made by the sheriff; pending these motions, at April Term, 1871, the purchaser of the property moved that the sheriff have leave to amend his schedule and return, filed in the several cases. HELD:

That the application to amend was not made too late.

Jarboe *vs.* Hall, *et al.*

The right of a sheriff to correct his return to a *fieri facias*, so as to make it conform to the truth of the fact, whatever that may be, and to give it effect and legal operation, is not limited to the return term of the writ.

Where a sheriff's schedule of property taken under a *fieri facias* is imperfect, in not containing a sufficiently definite description of the land seized, such defect is cured by a special return to the writ, in which the land is described as being the same on which the defendant then resided.

Certain writs of *fieri facias* having been issued, were placed by the sheriff in the hands of his deputy, by whom the land was sold, and all the other proceedings taken under the writs. In the schedules and returns it was stated that the levy under the writs had been made "on the 17th day of July, 1868," when they were not issued until the 30th of that month; and further, that the interest of one of the defendants only had been levied on and sold. Motions were made by the defendants and others in interest, to quash the writs and levies thereunder, and to set aside the sale. The purchaser of the property moved that the sheriff have leave to amend his schedules and returns by substituting in the place "of the 17th day of July, 1868," the words "after the issuing of the writ and before the return day of the writ," and by stating that the interest of all the defendants in the land had been levied on and sold. The sheriff had no personal knowledge of what was done in executing the writs, and did not know what interests in the land was levied on, or whether in fact any levy was actually made under the writs. The deputy sheriff being dead, there was no one cognizant of the facts, nor was there any memorandum or other data by which the amendments could be made. HELD:

1st. That the proposed amendments were not allowable.

2nd. That the schedules and returns should be quashed as irregular.

3rd. That the sale was invalid, it appearing from the schedules and returns that no levy was actually made under the writs.

CROSS APPEALS from the Circuit Court for Prince George's County.

The case is sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, MILLER and ALVEY, J.

*Daniel Clarke,* for Jarboe.

*R. B. B. Chew* and *William H. Tuck*, for Hall and others.

BARTOL, C. J., delivered the opinion of the Court.

The sheriff's sale, which gave rise to this controversy, was made on the 19th day of July, 1869, under and by virtue of five writs of *fieri facias;* all of which are set out at length in the record, and which, for sake of brevity, we will refer to by their numbers, as follows: No. 18, No. 48, No. 49, No. 50 and No. 51.

In No. 18 the writ was issued on the 20th day of June, 1868. In each of the others the writs were issued on the 30th day of July, 1868. In No. 50, the writ appeared originally to have been issued on the 30th day of June, 1868; and in No. 51, on the 20th day of July, 1868; but these were clerical errors which were afterwards corrected, and the true date of their issue was supplied.

Under each of the writs the sheriff returned the same schedule of property, setting forth that he had made his levy thereon as the property of *William W. Hall,* (one of the defendants named in the writs,) *on the 17th day of July,* 1868.

The description of the land seized, as contained in the schedules, is as follows: " All that tract of land known as ' Beaver Dam Neck,' part of ' Parcel Enlarged,' and part of ' Poplar Thicket,' containing 425 acres, more or less, and adjoining the lands of S. T. Belt, R. D. Hall's heirs, and others;'' certain personal property is also mentioned in the schedules.

In the special returns of the sheriff, which were the same under each of the writs, he returned that in virtue of the writ in No. 18, describing it, he had, *on the 17th day of July,* 1868, "seized and taken in execution all the right, title, interest, estate, property, claim and demand, at law and in equity, of William W. Hall, of, in and to the following real estate in Prince George's County,

Maryland, to wit:'' (then follows the same description as contained in the schedules,) and stating "that it is the same land on which the said William W. Hall then resided.''

The return further states that he had given public notice of the time and place of sale, &c., and "that said real estate would be sold to satisfy the amount due on said execution (in No. 18) and four other writs of *fieri facias*, to wit:'' (describing the writs in Nos. 48, 49, 50 and 51.) He returned William A. Jarboe, Jr., as the purchaser, for the sum of twenty-five hundred dollars.

Upon the return of the writs, at October Term, 1869, the defendants, and certain sureties and judgment creditors of William W. Hall, filed motions to quash the several writs of *fieri facias*, and the levies thereunder, and to set aside the sale, assigning several reasons in support of the motions, which need not be repeated here. In No. 18, the motion to quash was sustained by the Circuit Court, and the writ of *fieri facias* in that case was quashed and the levy and sale thereunder set aside; but no appeal was taken from the action of the Circuit Court in that respect; its ruling being acquiesced in, we are not called on to review it on this appeal. On the 15th day April, 1871, Jarboe, the purchaser, appeared by counsel and moved in each of the other cases, (Nos. 48, 49, 50 and 51,) "for leave that the sheriff may amend his schedule and return '' filed therein.

By the order of the Court testimony was taken upon the several motions, whereupon the Circuit Court allowed the amendments to be made, and then passed an order setting aside the sale under Nos. 48, 49, 50 and 51.

From the order allowing the amendments William W. Hall and others appealed; and an appeal was taken by Jarboe, the purchaser, from the order setting aside the sale.

Upon these cross appeals the first question for this Court to determine, is whether the amendments were properly allowed.

We do not consider that the application to amend was made too late. In *Berry vs. Griffith,* 2 *H. & G.,* 337, it was said that "a sheriff has a right, in due time, to correct his return to a *fieri facias,* so as to make it conform to the truth of the fact, whatever that may be, and to give it effect and legal operation." In that case the correction was made at the Term to which the writ was returned. But there is no authority for saying that the right to make such correction is always limited to the return Term of the writ. In this case the motions to quash the writs, and to set aside the levies and return, were pending in the Circuit Court, the matter was still in *fieri,* and it was, as said in *Berry vs. Griffith,* not only the right but the duty of the sheriff to correct his returns, so as to make them effective, provided he could do, so consistently with the truth of the facts.

The amendments allowed by the Court, and made by the sheriff, so far as it is necessary to refer to them, were as follows:

1st. The schedules were amended so as to state that the levy, under each writ, was made "after the issuing of the writ and before the return day. of the writ," substituting those words in the place of "the 17th day of July, 1868," which was the date of the levy stated in the original schedules and returns.

2d. By the amended schedules and returns it was stated that the interest of William W. Hall, Edward G. W. Hall, and Richard G. Cross, in the lands, had been seized and sold; whereas, in the original schedules and returns, it was stated that the interest of William W. Hall only, had been levied on and sold.

3d. The description of the land was changed, by inserting two other names besides those first mentioned, viz:

"Addition" and "Addition to Hope Enlarged," and also by referring to a certain deed for further description.

This last amendment, however, is not in our opinion material or important. Although the schedules first returned were imperfect, as not containing a sufficiently definite description of the land seized, that defect had been corrected by the original special returns, in which the land was described as being the same on which William W. Hall then resided; that was equivalent to saying that it was the same land "then in possession of William W. Hall," which in *Murphy vs. Cord,* 12 *G. & J.*, 182, was held to be sufficient.

By comparing the descriptions of the land contained in the original and amended returns, it clearly appears that they refer to the same land; the latter are no more comprehensive than the former; in each, the extent of the levy is limited by the possession or occupancy of William W. Hall.

With respect to the first and second amendments above referred to, they are material and important, as affecting the regularity of the sheriff's proceeding, and the rights of the purchaser. And the next inquiry is, were they properly allowed to be made? It appears by the testimony of *Dyer,* the sheriff, that he has no personal knowledge of what was done in executing the writs, he does not know what interests in the land were levied on, or whether there were in fact any levies actually made under the writs in Nos. 48, 49, 50 and 51. He placed them in the hands of his deputy, George W. Hardesty, by whom the land was sold, and all the other proceedings taken under the writs. Hardesty being dead there was no one cognizant of the facts, nor was there any memorandum or other data, by which the amendments could be made.

In the original schedules and returns, it was stated that the levy under these four writs, had been made on the 17th day of July, 1868, which of course was im-

possible; as they were not issued till the 30th of that month. We think the conclusion is irresistible from the whole record, that no levy was in fact made under these writs. The deputy sheriff having levied under the writ in No. 18, on the 17th day of July, probably did not consider it necessary to make any levy under the others; for if the first writ had been legal and regular, and the seizure and sale under it valid, the surplus money in his hands after satisfying that, would have been applicable to the satisfaction of the others, they having been issued on junior judgments. But however that may have been, we think there was no sufficient ground, to justify the proposed amendments; and that it was error to allow them to be made. The case stands therefore upon the original schedules and returns made under these four writs, by which it appears that there was no levy actually made thereunder. The pretended levy being stated to have been made on the 17th day of July, 1868, which was impossible. This is fatal to the validity of the proceeding. "To enable a sheriff to sell land, a seizure is indispensable, and without a valid seizure the purchaser acquires no title." *Waters vs. Duvall*, 11 *G. & J.*, 37; *Berry vs. Griffith*, 2 *H. & G.*, 337; *Elliott vs. Knott*, 14 *Md.*, 135.

For this reason, the several schedules and returns ought to be quashed as irregular, and for the same reason, the sale was properly set aside as invalid.

This renders it unnecessary to express any opinion upon the other objections, which have been made to the validity and regularity of the sale. For the reasons we have stated, the order of the Circuit Court setting aside the sale will be affirmed, and the case remanded to the Circuit Court.

*Order affirmed, and*
*cause remanded.*

(Decided 18th February, 1873.)