(Decided December 5th, 1865.)

---

JACOB EAKLE AND OTHERS, *vs.* GEORGE W. SMITH, INSOLVENT TRUSTEE OF AMOS EAKLE.

MARYLAND CODE.—Where execution was issued on the 29th of January, 1861, upon a judgment or decree rendered on the 1st Monday of July, 1860, all proceedings under the latter must be regulated by the Code.

APPEAL : STAY OF EXECUTION.—Under the CODE, ART. 5, SEC. 33, in cases of judgments on which an execution has been issued, "whether the same has been in part executed or not," the filing an appeal bond approved as required, shall stay any execution which has been issued on any such judgment.

The appeal *per se* operates no *supersedeas*, whether the execution be issued or not. The defendant who desires to protect himself from the effects of an execution, if he would avoid all risk of delay, must file the appeal bond immediately. But if he is willing to incur the risk, or unable to give bond earlier, he may defer it until the last moment before execution is consummated, provided he has appealed in time.

The non-payment of the costs of the execution, does not necessarily destroy the effect of the bond as a stay of execution, this requirement of the law being intended for the protection of the Sheriff, not of the plaintiff.

POUNDAGE FEES.—As a general rule the defendant and not the plaintiff is liable for poundage fees. To enable the defendant to pay the costs they must be ascertained by the Sheriff and demanded, and a tender of the costs would be useless, if not impossible, in a case where the Sheriff, without demanding his costs persisted in selling under the execution.

SHERIFF'S SALE, WHO MAY OBJECT TO.—Where the defendant against whom a decree for the payment of money has been passed, subsequently sells his land which is afterwards seized and sold under an execution upon the decree, the defendant as well as his vendee, while the execution proceedings are *in fieri*, has such an interest in the sale as will entitle him to the protection of the Court, if the sale was made without authority, or under such circumstances as necessarily involved a sacrifice.

APPEAL from the Circuit Court for Washington County.

A decree was passed by the Circuit Court for Washington County, as a Court of Equity, bearing date the 20th day of July, A. D., 1860, in the case of George W. Smith, the appellee, as insolvent trustee of Amos Eakle, against the appellant, Jacob Eakle, and a certain Amos Eakle, and decreeing that the defendant, *Jacob Eakle*, pay or bring into this Court to be paid unto the complainant, George W. Smith, as insolvent trustee of the said Amos Eakle the sum of $4,201.30, current money, with interest and costs.

From this decree the said Jacob Eakle appealed on the 14th of August, 1860, and on the 24th day of November, A. D., 1862, filed his appeal bond, which was duly approved on the day following, and before the property was sold by the Sheriff; on this decree and without any order

or leave of the Court first had, a *fieri facias* was issued. out of said Court, on the 29th day of January, 1861, directed to the Sheriff of said county, and reciting, "Whereas, at a Circuit Court, sitting as a Court of Equity, begun and held at Hagerstown, in and for said county, on the first Monday of July, A. D., 1860, a certain George W. Smith, trustee of Amos Eakle, an insolvent debtor, by the decree of said Court recovered against a *certain Jacob Eakle and Amos Eakle*, late of Washington county, as well the sum of $4,201.30, with interest thereon from the 20th day of July, A. D., 1860, till paid, as the sum of $545.68⅔ for his costs and charges by him about his suit in that behalf laid out and expended, whereof the said *Jacob and Amos* are convict, as appears of record. Therefore you are hereby commanded, that of the goods and chattels, lands and tenements of the said Jacob Eakle and Amos Eakle, being in your bailiwick, you cause to be made," &c. This execution was stayed by injunction granted upon a bill filed by Christian Eakle, to whom the said Jacob Eakle had conveyed the lands taken in execution by his deed dated the 3rd day of August, A. D., 1860. The defendant in said bill, George W. Smith, answered the same, and upon a hearing upon bill and answer, the said injunction was dissolved.

The Sheriff then proceeded to sell said property, and advertised the same, and in such advertisement stated that "by virtue of a writ of *fieri facias* issued out of the Circuit Court for Washington county, as a Court of Equity, at the suit of George W. Smith, trustee of Amos Eakle, and to him directed against the goods and chattels, lands and tenements of *Jacob Eakle and Amos Eakle*, I have seized and taken in execution all the estate, right, title, interest, trust, property, claim and demand at law and in equity of the said *Jacob Eakle and Amos Eakle*, in and to the following real estate, (here describing the said farms.) And I

hereby give notice that on Tuesday, the 25th day of November, 1862, in front of the Court-house in Hagerstown, I will proceed to sell the interest at law and in equity of the said *Jacob Eakle*, in and to the above described tracts of land at public sale to the highest bidder for cash.'' On said day, as advertised, he sold at public sale the tracts aforesaid, and the Sheriff so made return of his proceedings.

Upon the return of said execution the said Jacob Eakle, the defendant in the decree, came into Court and in two several motions moved the Court to quash said execution and set aside said sales, and at the same time the said Caleb Eakle and William Hammond, as devisees of Christian Eakle, dec'd, came also into Court and made the like motions, and thereupon the said George W. Smith, by his petition, prayed the Court that his said execution be amended by striking out the name of Amos Eakle, upon the ground that the same was a clerical error or misprision of the clerk.

The plaintiff and the purchasers at the Sheriff's sale made answer to these motions, and affidavits were taken and filed by the respective parties, and the cause was heard and the Court, (FREDERICK NELSON being special Judge,) passed an order allowing the amendment of the execution, and overruling the several motions to quash the execution and set aside the sales thereunder, from which said order the appellant, Jacob Eakle, and the appellants, Caleb Eakle and William Hammond, severally appealed.

In the motion made by said Jacob Eakle to set aside said sale, he assigned for cause:

First. That prior to said sale he sued out an appeal from said supposed decree, to the Court of Appeals of Maryland, and, also, had prior to said sales filed an appeal bond, approved by the clerk of the Circuit Court for Washington county, which said bond operated in law as a *supersedeas*

or stay of proceedings upon said supposed decree and said *fieri facias.*

Second. That due and legal notice of the time and place of sale was not given by said Sheriff.

Third. That no decree, such as is recited in said *fieri facias*, was ever passed by the Circuit Court for Washington county, sitting as a Court of Equity.

Fourth. That said *fieri facias* was issued against wrong parties, because there is one decree of said Court for said sum of money against the defendants named in said execution.

Fifth. That no schedule or list of the property taken under said *fieri facias*, with the value set upon it by proper appraisers, was made by said Sheriff and returned with said execution.

Sixth. That said lands were sold at a grossly inadequate price.

In the motion of the said Jacob Eakle to quash said execution he assigned for cause :

1st. There is no such decree of the Circuit Court for Washington county, as that recited in the writ of execution.

2nd. The said writ of *fieri facias* was issued at the instance of the said George W. Smith, trustee, without first having obtained the order of this Court authorizing it, and was issued without authority—was premature and contrary to law.

The said Caleb Eakle and William Hammond, as devisees of Christian Eakle, dec'd, came into Court at the same time, and filed their motion to set aside said sales, and assigned the same causes as the said Jacob Eakle, as aforesaid, and also filed their motion to quash, and assigned the same causes assigned by the said Jacob Eakle, with the additional third cause, that the decree, under which the said *fieri facias* was alleged to have been issued,

was not passed by said Court until after the execution and recording of said deed from said Jacob to Christian Eakle ; and although it bears date anterior to said deed, the said Christian Eakle gave no consent to its being ante-dated, and that the same was done by said Court in derogation and violation of his rights, and that as to him, and those claiming under him, the said decree was illegal. The said Caleb Eakle and William Hammond claim a right to come into Court and make their motions, upon the ground that the said decree, whilst bearing date as of the 20th day of July, A. D., 1860, was not, in fact, passed by the Court until a considerable time thereafter, and on or about the 14th day of August, 1860. That on the 3rd day of August, and before the passing of said decree, the said Jacob Eakle sold and conveyed by his deed of that date, duly executed and recorded, said real estate to said Christian Eakle ; and that afterwards, and on the 4th day of April, 1861, the said Christian, by his last will and testament, devised one of said farms to said Caleb, and a certain sum of money, to be derived from the sale of the other of said farms, to said William Hammond, by reason of which they are affected by said sales, and have a right to be heard in these proceedings.

This cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, and COCHRAN, J.

*Wm. T. Hamilton* and *O. Miller* for the appellants.

Under such motions "it is the necessary practice to examine into all the facts by parol or other proof, and not regard technical estoppels." *Moreland vs. Bowling,* 3 *Gill,* 501. *Marshall's Lessee vs. Greenfield,* 8 *G. & J.,* 349. *Miles vs. Knott,* 12 *G. & J.,* 442. *Monahan vs. Scammon,* 3 *Md. Rep.,* 471. *Trail use of Buckey vs. Snouffer,* 6 *Md. Rep.,* 309. *Jackson vs. Robins,* 16 *Johnson,* 573.

Then as to the first cause assigned by the appellant, Jacob Eakle, for setting aside said sales, viz : That prior to these said sales he had sued out his appeal bond, which was duly approved by the clerk.   The appeal in the cause was taken in time, being taken on the same day or the day after the decree was in fact passed.

The Act of 1826, chap. 200, provided that no execution should be stayed or delayed, unless the person appealing should immediately on praying such appeal enter bond, &c.; the same provision is in the Code, page 25.   The practice has been not to file it immediately.   The bond is designed to stay execution, and in such stay at the same time protect the rights of the party having the judgment or decree, and secure him against loss or injury.   But we contend that by the Act of 1840, chap. 232, it is provided simply, that in all cases of appeal from the judgment or decree of any Court of this State, wherein an appeal is by law allowed, the filing of an appeal bond, approved as the law prescribed, shall stay any motion which may or has been, or shall be issued on any such judgment or decree, whether such execution may have been in part executed or not, &c.   Where, then, an appeal is taken in time, as in this case, this act allows the bond to be filed where the execution has in part been executed, and without limit as to time, so that the execution is not fully executed.   And this appears to be right in principle, for whilst the party for whose benefit the bond is given is altogether protected, and so the party giving the bond if the cause should be ultimately decided for him, and which might not be the case in fully executed process.   We contend that the Act of 1840 governs this case.   These proceedings were commenced before, and were pending at the adoption of the Code; and by the Code, page 9, all such suits pending at the time of its adoption, should be proceeded with as if the Code had not been adopted.

The Act of 1840, as also the Code, provides further, that the party executing said bond shall pay to the Sheriff the costs of execution. This is for the benefit of the Sheriff only. Where the Sheriff was notified in this case of the bond, he made no claim for costs, nor did he exhibit the amount. The appellant, Jacob Eakle, did not and would not know them, and being for the benefit of the Sheriff, he should have properly presented his bill of costs. He can by his acts surely obviate the necessity of such judgment of costs, and still the bond remain effectual for all purposes.

As to the 2d cause assigned by the appellant, Jacob Eakle, viz: That due and legal notice of such sales was not given by the Sheriff. The return of the Sheriff shows that he set up notice of such sale at the Court-house door only, and published the same in one newspaper. The Act of 1816, chap. 129, requires notice to be set up at the Court-house, and at other public places in the county. See *Moreland vs. Darling*, 3 *Gill*, 500. The Code, page 587, sec. 4, only requires the notice to be set up at the Court-house door, and published in one newspaper.

We contend, as in the preceding proposition, that the Act of 1816 governs these proceedings by virtue of the first Article above referred to. Besides, the Sheriff in his advertisement of sale proclaims that he seized the interest of both defendants in the execution, and then proposes to sell the interest of but one. He creates the impression that both have an interest, and then follows that impression by selling the interest of one only. His advertisement had a tendency to create distrust and repress bidding in the common mind.

As to the 3d cause assigned, viz: That there is no such decree as recited in this execution, and the 4th cause assigned, viz: that said *fieri facias* was issued against wrong parties, because there is no decree of said Court for said sum of money against said defendants named in said execution.

We hold that the amendment was improperly allowed at the time, and that the objection taken at the return of the execution to the manifest error of the execution, and whilst proceedings were in force, are fatal to it as to the sale.

All inequalities and errors can be taken advantage of at the return of the execution, and it is proper and indeed only time to do it; the proceeding is voidable only and not absolutely void. *Manahan vs. Scammon,* 3 *Md. Rep.,* 471. *Tomlinson's Lessee vs. Devore,* 1 *Gill,* 348. *Clarke vs. Diggs,* 5 *Gill,* 109. *Moreland vs. Bowling,* 3 *Gill,* 501. *Barney vs. Patterson,* 1 *Gill,* 204. *Marshall's Lessee vs. Greenfield,* 8 *G. & J.,* 349. *Miles vs. Knott,* 12 *G. & J.,* 442. *Trustees of the Poor vs. Pratt,* 10 *Md. Rep.,* 5. *Elliott vs. Knott,* 14 *Md. Rep.,* 121. *Jackson vs. Bartlet,* 8 *John.,* 361. *Jackson vs. Robins,* 16 *John.,* 573. *Waters vs. Duvall,* 6 *G. & J.,* 79. *Stat. of Jeofails, and Act of* 1852, *ch.* 180, *sec.* 4. 2 *Tidd's Pr.,* 768, 769.

It is admitted that irregular or wrongful process cannot be inquired into collaterally, and upon this there are numerous decisions in this State. And for this class of cases we also refer to the cases last above cited.

But in this case, where the question is directly at issue, the reverse must be the law. The appellant well aware of this, hoped to perfect his process by amendment. *Prather vs. Manro,* 11 *G. & J.,* 261.

The amendments are made in a large class of cases; some where rights are not finally determined, but where parties are heard upon their whole case after amendment; some where no injury is or can be sustained; some where rights are secured, and where not to amend gross injustice would be done to parties; the whole matter of amendment seems to go to the protection of rights attained or secured. And for this class of cases we refer to *Bryan vs. McPherson,* 12 *G. & J.,* 157. *Prather vs. Manro,* 11 *G. & J.,* 261. *Bank of Maryland vs. Lyles,* 11 *G. & J.,* 332. *Roby*

*vs. Turner*, 8 *G. & J.*, 132. *Clarke vs. Digges*, 5 *Gill*, 109. *Trail use of Buckey vs. Snouffer*, 6 *Md. Rep.*, 308. *McCoy vs. Boyle*, 10 *Md. Rep.*, 391. *Green vs. Hamilton*, 12 *Md. Rep.*, 326. *Boteler vs. Belt*, 7 *G. & J.*, 113. *Case vs. McGee*, 8 *Md. Rep.*, 114.

In contemplation of law all wrongful process against a party is injurious ; here it is not against the person, but against property in the sale of which the confidence and knowledge of bidders are involved, and upon the regularity of process so much depends, and because of which the defendant has his day in Court to show such errors, and be relieved from the injuries caused, or which might have been caused by them.

But here by this amendment no such consideration is allowed. The wrong is perpetrated without redress, and though in time before the Court, and at the very and only time when required to be there, no inquiry as to the possible or legal effect of such wrongful process upon bidders or probable value of property, is to be allowed, but the amendment is to be allowed as a matter of course.

This cannot be the law, and we think that upon a critical examination of all the authorities, the Court will observe that there is no such exercise of power laid down in any of the books. We must be careful to distinguish between this case, when the error is directly attacked, and attacked at the right time and by the proper party, and when it is attacked collaterally ; for in the latter case the rights of third and innocent parties intervene, and as between the error which might have been taken advantage of by the defendant at the proper time, and was not so taken, and the injury which would enure to such innocent parties after the payment of this money and disposition of it by them attacking it, the Courts having to protect such persons, established the first and equitable principles that they should not be disturbed. The authorities already referred to show these principles.

As to the fifth cause assigned, viz : that no schedule or list of the property taken under said *fieri facias*, with the value set upon it by sworn appraisers, was made by said Sheriff and returned with said execution.    There must be a valid seizure to make the execution effective.  *Beatty vs. Chapline,* 2 *H. & J.*, 9.   *Berry vs. Griffith,* 2 *H. & G.*, 337. *Peter vs. Magruder,* 11 *G. & J.*, 217.   *Waters vs. Duvall,* 11 *G. & J.*, 37.

In this case there was no valid seizure made, and schedule of appraisement by sworn appraisers.   We hold that this is required.  *Evans' Practice,* 366, 367.  *Beatty vs. Chapline,* 2 *H. & J.*, 7, 9.

Since the case of *Beatty vs. Chapline,* the uniform practice is to make a schedule of appraisement, and among the great number of cases we give the following to show the established practice : 2 *Harris' Entries,* 166, 362, 363.  2 *Evans' Harris,* 505.  *Evans' Practice,* 367.  *Barney vs. Patterson,* 6 *H. & J.*, 182.  *Barry vs. Griffith,* 2 *H. & G.*, 338.  *Frederick vs. Floyd,* 1 *H. & G.*, 172.  *Thomas' Lessee vs. Tenney, Id.*, 435.   *Clarke vs. Belmear,* 1 *H. & J.*, 433.  *Marshall's Lessee vs. Greenfield,* 3 *G. & J.*, 350.   *Waters vs. Duvall,* 11 *G. & J.*, 47.   *Campbell vs. Booth,* 8 *Md. Rep.*, 108.   If there be no statute requiring it, the uniform practice must surely establish it as requisite.  *Shafer vs. Stonebraker,* 4 *G. & J.*, 344.   *Creecy vs. Lawson,* 2 *Gill,* 68. *State vs. State use of Ducker,* 2 *Md. Rep.*, 284.   *Pegg vs. Warford,* 7 *Md. Rep.*, 582.  *Whitehouse vs. State, Id.*, 442.

The 2d cause assigned for quashing the execution is, that the said "writ of *fieri facias* was issued at the instance of the appellee, without first having obtained the order of the Court authorizing it, and was issued without authority." The order of the Court must first be had.   The law, we contend, requires it.   *Alexander's Ch. Practice,* 199, 200, 201, 202.   *Act of* 1785, *chap.* 72, *sec.* 25.   1 *Dorsey, page*

Eakle et al vs. Smith.

222.   Code, sec. 118, Art. 16, page 96.   Owings vs. Worthington, 4 Md. Rep., 260.   Keighler vs. Ward, 8 Md. Rep., 254.

By the Act of 1785 and the Code, the appellee was entitled, at his option, and upon petition to the Court, to have an order passed directing a writ of sequestration, or for injunction, or *fieri facias* to issue.   The wrong in this case arose in failing to comply with the law in this respect.   Upon petition the Court would have directed the proper execution to issue.   The effort of the appellee now is, by amendment, to correct a wrong process wrongfully issued.   This summary correction of gross errors and utter abnegation of others, in legal process, is carrying the doctrine too far.   If laws are passed and rules established for wise purposes enforce them.   If not, repeal and abrogate them; but whilst acknowledged to be in force let them have their legal effect and consequences like all established laws and rules ought to have when they are invoked in the proper place, and at the proper time, and by the proper person.   It is said that such an order would have passed as a matter of course.   Certainly, if in the opinion of the Court it were right; it was refused in the case in 4 Md. Rep., above referred to.

Before proceeding to notice the motions filed by the appellants, Caleb Eakel and William Hammond, it may be proper to refer to an objection urged by the appellee to the standing of the appellee, Jacob Eakle, in the Court, or his right to be heard in the cause.   This objection is urged upon the ground that he had conveyed the property sold under this execution to Christian Eakle.   It is contended that in two respects he is entitled to be heard:

First, as the defendant in the cause.   The authorities before referred to; Moreland vs. Bowling, 3 Gill, 500, &c., maintain the right of the defendant to appear and take advantage of whatever errors there may be in the process.

2nd. That by the said deed of conveyance to Christian Eakle he covenanted for further assurance to the said Christian Eakle. This covenant for further assurance puts Jacob Eakle in much interest in these proceedings. He is obliged under this covenant to remove all judgments and other incumbrances. *King vs. Jones & Rowland,* 5 *Taunt.,* 416. 1 *Eng. C. L. Rep.,* 139. *Platt on Covenants, vol.* 3, *Law Library,* 153. 2*d Sugdon on Vendors,* 767.

The additional and other cause assigned by the said Caleb Eakle and William Hammond is, that the decree, under which said execution was issued, was not passed by said Court until after the execution and recording of said deed from Jacob Eakle to Christian Eakle, and without the consent of the said Christian, and that the same was in violation of his rights, &c. They are affected by said sales, and all persons affected must take notice of them, and as they, therefore, are properly before the Court objecting to his claim upon the whole case, it is contended that the said sales ought to be set aside.

*Thos. S. Alexander* and *R. H. Alvey* for the appellees.

The Court ordered the writ to be amended, and in support of this part of the order the appellees insist:

1. That the Circuit Court has a clear authority to amend a *fieri facias,* to correct a misrecital therein of the judgment or decree in execution of which it was issued. 2 *Tidd's Practice,* 713, 1020, 1028. *Browne vs. Hammond, Vide Barnes,* 16. *Laroche vs. Wasbrough,* 2 *T. R.,* 737. *Stevenson vs. Curtle,* 1 *Chitty,* 349. *M. Carmack vs. Melton,* 1 *A. & E.,* 313. *Porter vs. Goodman,* 1 *Cowen,* 413. *Owens vs. Sampson,* 3 *Watts,* 87. *Trail vs. Snouffer,* 6 *Md. Rep.,* 315.

2. The authority to amend rests in the discretion of the Circuit Court, and from the exercise of this decision

no appeal will lie. *Ellicott vs. Eustace,* 6 *Md. Rep.,* 506. *Scales vs. Cheere,* 12 *M. & W. Mellish vs. Richardson,* 1 *Clarke & Fin.,* 221. In truth the discretion was rightly exercised, as it is apparent that the misrecital was nothing more than a misprision of the clerk. *Alex. Ch. Pr.,* 281.

3. The sale by the Sheriff was only of the interest of Jacob Eakle; he could not convey as against Smith, his creditor, and the purchasers are substituted by law in the place of the creditor, under whose execution the land was sold. *Spindler vs. Atkinson,* 3 *Md. Rep.,* 423.

And while the deed may be fraudulent and void, as against Smith, and the purchasers under his execution, it is perfectly good and binding as between the parties, and against the grantor and those claiming under him; and it is competent to the creditor or the purchasers under his execution to set up or rely upon the deed, by way of estoppel or preclusion of the grantor, and yet impeach it as void against themselves. *Seal vs. Duffy,* 4 *Barr.,* 274. *Kinnemon vs. Miller et al.,* 2 *Md. Ch. Dec.,* 407. *Cushwa vs. Cushwa,* 5 *Md. Rep.,* 44.

But whether it be void or not, the deed conveyed, as against Jacob Eakle, all his interest and title in and to the land; and so far from the sale being an injury to him, it is manifestly to his benefit that an interest that he could not claim has been sold in discharge of his debt.

But it has been urged that Jacob Eakle is bound on his covenants in his deed, and is thus interested in sustaining his motions.

The deed contains two covenants; one of general warranty, and the other, that the grantor will "make and lawfully execute, acknowledge and deliver all and every such further and other deeds, conveyances and assurances in law, whatsoever, for the better and more fully conveying and assuring" to the grantee the land conveyed.

To constitute a breach of the covenant of general warranty there must be an eviction under title existing at the date of the covenant. *Ellis vs. Welch*, 6 *Mass.*, 246. 2 *Greenlf. Ev.*, sec. 244.

And under the covenant for further assurances, as used in the English practice, wherever it is covenanted, that the grantor "will make, do and execute, or cause and procure to be made, done and executed all and every such further and other lawful and reasonable act and acts, thing and things, conveyances and assurances in the law whatsoever, for the further, better, more perfect and absolute granting, conveying and assuring," &c., the grantee or his heirs, may by force and construction of the terms, "do reasonable acts and things," call for the removal of a judgment or other incumbrance. *Platt on Cov.*, 341, 344. *King vs. Jones*, 5 *Taunt.*, 427. 4 *Maule and Selw.*, 188. *Cro. Jac.*, 251. *Cro. Car.*, 503, 505.

It will be perceived that the covenant in this deed embraces no such terms as those in the English covenants, under which the removal of incumbrances can be required; nor does the covenant under consideration contemplate anything more than the making of other or further deed of conveyance if required.

Here, however, according to the sworn allegation of Christian Eakle, in his bill to obtain the injunction to restrain the execution, and according to the allegation made in this cause by the devisee, the decree was not in existence at the date of the deed, nor for many days after; and if such be the case, (and they could not contend the contrary,) clearly, they could never allege a breach of the covenant; and, moreover, if their allegations as to the ante-dating of the decree be true, and the deed was *bona fide* and for value, and without notice, no one could contend that the title under the deed could be prejudiced by the decree.

23     v. 24.

The devisees of Christian Eakle have no day in Court on the return of the *fi. fa.*, nor any interest in the matter, to entitle them to apply to have the execution quashed and the sale set aside. The sale was only of the interest of Jacob Eakle, and until the right and possession of Christian Eakle, or of his devisees under the deed, be disturbed by process to dispossess them, they have no day nor right to move in Court, and then only in reference to the process, by which they may be sought to be disturbed. *Waters vs. Duvall,* 6 *G. & J.,* 76. *Spencer vs. Ragan,* 9 *Gill,* 480. *Glassel's Adm. vs. Wilson's Adm.,* 4 *Wash'g C. C. R.,* 59. 5 *John,* 97, 99. 1 *Cow.,* 199. Nor can their rights, if any they have, be adjudicated on this summary motion. 6 *H. & J.,* 23, 24. 2 *H. & G.,* 469. 8 *Md. Rep.,* 254.

4. By going into equity for relief against the decree and execution, and the pendency of those proceedings, Christian Eakle and those claiming under him are precluded from setting up the same ground of relief in this case. They are not allowed to prosecute two proceedings for the same relief, and the right to proceed under the execution and make the sale of the land levied on, was determined by the order dissolving the injunction. *Munnikyson vs. Dorsett,* 2 *H. & G.,* 374. *Mitford Eq. Pl.,* 290, *top,* and 248 *side.*

5. And the overruling of the motion to quash the *fi. fa.* is not the subject of an appeal, the order in that respect being of an interlocutory character. *Baldwin vs. Wright,* 3 *Gill,* 241. *Welsh vs. Davis,* 7 *Gill,* 366. *Hebb vs. Hebb,* 5 *Gill,* 506.

6. The deed to Christian Eakle having been declared void as against the execution since the appeal taken, and the pretension of the devises being thus destroyed, they can make no further claim to be heard on their appeal, and it should therefore be dismissed. *Cleveland vs. Chamberlain,* 1 *Bl. U. S. Rep.,* 419.

II. If the foregoing positions do not dispose of the case, then it is insisted that the several grounds assigned for the motions made are wholly untenable, and are insufficient to affect either the validity of the execution or the sale thereunder ; and—

1. The filing of the appeal bond by Jacob Eakle at the time and under the circumstances operated no stay of the execution on the decree appealed from. The 31st section of Article 5 of the Code provides that "no execution upon any judgment or decree in any Court of law or equity shall be stayed or delayed, unless the person against whom such judgment or decree shall be rendered or passed, shall immediately, upon praying an appeal from any such judgment or decree, enter into bond with sufficient securities in at least double the sum recovered by such judgment or decree," conditioned "that if the said party appellant, or party suing out such writ of error, shall not cause a transcript of the record and proceedings of the said judgment or decree to be transmitted to the Court of Appeals within the time required by law, and prosecute," &c.

The bond filed by Jacob Eakle contains the condition prescribed by this section ; and as the law requires the appeal to be taken within nine months, and the record to be transmitted to the Court of Appeals within nine months from the time of the appeal taken, it stipulates to do an impossible thing ; to do that in the future which ought to have been done in the past, and that after more than twenty-seven months from the time of the appeal prayed, and the lapse of more than sufficient time within which the appeal ought to have been prosecuted and disposed of. That important part of the condition which has for its object the prevention of delay, is perfectly nugatory in this bond and of no sort of benefit to the appellee. The party

having nine months within which to enter his appeal, he may delay it until the last day of the time, and though an execution may have issued in the meantime, if it be not executed, the filing an appeal bond will stay the execution ; "and the Sheriff or other officer in whose hands the execution may be, shall, upon exhibition to him of satisfactory evidence that an appeal bond has been filed and approved, and upon the receipt of the costs which have accrued in said excution, stay all further proceedings and deliver up the property." Sec. 33 of Art. 5.

By these sections the bond is required to be filed immediately upon praying the appeal, and unless it be done the law is express that no execution shall be stayed or delayed. And if a bond filed upon praying an appeal be rejected for insufficiency, and the party desires to file a new bond, it is necessary in order to be dispensed from the force of the term "immediately," to obtain a grant from the Court of further time to file such new bond, and when the new bond is filed it has relation to the time of filing the first. This provision would be wholly useless if filing a bond at any time without reference to the time of praying the appeal would operate a stay. Art. 5, sec. 35. *Saltmarsh vs. Tuthill*, 12 *How.*, 387. *Adams vs. Law*, 16 *How.*, 144.

As to the legal construction of the word "immediately," when used in a statute, see *Grace vs. Clinch*, 4 *Adol. & Ell.*, *N. S.*, 606. (45 *Eng. C. L. Rep.*, 605.) *Thompson vs. Gibson*, 8 *M. and W.*, 281, 287.

2. It is not shown what satisfactory evidence was furnished the Sheriff that the bond had been filed and approved; but it is clearly shown that the costs on the execution were not paid nor tendered to the Sheriff. The receipt of the costs by the Sheriff is an express condition upon which the execution could be stayed, and the Sheriff

could not waive or forego the compliance with it, as the bond filed, if valid at all, furnished no indemnity or security for costs accrued on the execution.

3. That due notice was not given, was not contended in the Court below, and it is supposed will not be contended here. The Sheriff's return shows the notice to have been regular. The objection grounded on the variance between the *fi. fa.* and decree is disposed of in the amendment that has been made, whereby the writ is made to conform to the decree. The variance however could not have prejudiced the right of the purchasers ; for while the process may have been erroneous by reason of the variance it was not void, and " such error would not affect the title of a purchaser, acquired by a sale under it." *Miles vs. Knott*, 12 *G. & J.*, 442, 452. 4 *Wend.*, 464 ; 12 *Wend.*, 96, 97.

And so in regard to the objection that no previous order was obtained for the *fi. fa.*, for if it were an objection at all, it would only be one of a formal irregularity in no manner affecting the validity of the process. In *Jeanes vs. Wilkins*, 1 *Ves., Sen., Lord Ch.* HARDWICK says : " To avoid the sale and title of the defendant, it must be proved that the *fi. fa.* was void, and conveyed no authority to the Sheriff ; for it might be irregular, and yet, if sufficient to indemnify the Sheriff, so that he might justify in an action of trespass, he might convey a good title, notwithstanding the writ might be afterwards set aside." 5 *John.*, 97–100. 2 *Tidd's Pr.*, 1072.

But by the established practice of the Courts of the State, the clerks issue, without previous order, *fi. fas.* on decrees like the one in this case, being simply for the payment of money ; for if the order had been applied for, it would have been granted as a matter of course. *Alex. Ch. Pr.*, 201. And the Legislature has recognized the practice, and as it would seem made it the duty of the clerks to issue on such decrees upon application of the plaintiff therein.

*Code, Art.* 10, *secs.* 30, 32 ; *Art.* 16, *sec.* 118 ; *Art.* 18, *sec.* 5 ; *Art.* 75, *secs.* 96, 104.

If it were the practice, however, to obtain the formal order for the *fi. fa.*, before issuing it, yet after the issue and execution thereof, as in this case, the Court would sanction and ratify such issue, and the proceedings thereunder. As in the case of *Harris vs. Alcock*, 10 *G. & J.*, 226, 252, where the Court said, " A Court of Equity will always ratify and confirm that when done, which as a matter of course, if previously applied to, it would have ordered to be done. If after the levy and before the sale under the execution in question, the Court had been called on by the appellee, to decree the sale of the property seized under the execution, the relief asked for would have been unhesitatingly granted. The sale then having been made by the appropriate legal officer, so far from setting aside the proceedings under the execution, the Court, if applied to for that purpose, had it been necessary, would have decreed the ratification of the sale which had been made." *Tyson vs. Mickle et al.*, 2 *Gill*, 376. See also *Clark vs. Abbott*, 1 *Md. Ch. Dec.*, 474.

4. The objection to the decree that it bears a date not of the time that it was actually passed, if founded in fact, cannot be considered in this proceeding. The decree stands for what it purports to be on its face, until reviewed or reversed in a proper and solemn manner. *Pheltz vs. Pheltz*, 1 *Md. Ch. Dec.*, 455. *Lovejoy vs. Ireland*, 19 *Md. Rep.*, 56. And if it were even apparent that there was error in the decree, the purchaser would not be affected thereby, for the *fi. fa.* gave the Sheriff the power of sale, and the purchaser's title is protected by it, though the decree should be afterwards reversed. *Elliott vs. Knott*, 14 *Md. Rep.*, 121. *Bennett vs. Hamille*, 2 *Sch. & Lefr.*, 566.

5. It is objected that the Sheriff had no regular appraise-

ment of the land after his levy thereon, and there is nothing in the case to show whether such was the fact or not. It is contended, however, if such an empty form is proper in a case like this, that it will be presumed to have been done ; that the Sheriff is presumed to have discharged his duty, if it does not affirmatively appear that he has not. *Hanson vs. Barnes,* 3 *G. & J.,* 359. But there is no law requiring such appraisement to be made of land seized under execution ; and the Sheriff is allowed no fee for such service. Code, Art. 38, sec. 27. And though such appraisement may be made in many instances, if it was omitted in this case, it could not have prejudiced any one ; certainly not Jacob Eakle, who disclaimed having any interest in the land seized. And the form of appraisement was, or would have been, useless and senseless, as the interest of Jacob Eakle was, at the time, wholly incapable of valuation.

The omission, however, of the appraisement, if it was in fact omitted, would in no manner affect the title of the purchasers under the levy. Ch. JOHNSON said, when speaking of the manner of conducting a judicial sale by an officer of the Court, and of the rights of a purchaser thereunder, " that a *bona fide* purchaser is not to lose the right, which he supposes he was acquiring when dealing with its (the Court's) agents, upon objections upon the modal regulations of the sale, the non-observance of which is not shown to have been injurious. *Gibbs vs. Cunningham,* 1 *Md. Ch. Dec.,* 44, 52. 8 *G. & J.,* 349. 3 *Pet.,* 339, 340. The purchaser's title depends on the judgment, the levy, and the sale ; and all other questions are between the parties to the judgment and the Sheriff. *Wheaton vs. Sexton,* 4 *Wheat.,* 503, 504. 2 *Tidd's Prac.,* 1072.

It is the sale of the Sheriff which vests the title in the purchaser, and if there has been a levy, it in no manner depends upon such a previous formality as an appraisement. *Barney vs. Patterson,* 6 *H. & J.,* 182. *Estop vs. Weems,*

6 *G. & J.*, 303, 305.    *Waters vs. Duvall*, 11 *G. & J.*, 37.
*Tomlinson vs. Devore*, 1 *Gill*, 345.

6. As to the alleged inadequacy of price, the objection certainly comes with an ill grace, after all the warnings, threats and menaces that were put forth on the day of sale to deter bidders.   Considering all the circumstances, the price was by no means inadequate.   *Cushwa vs. Cushwa*, 5 *Md. Rep.*, 55.

Bowie, C. J., delivered the opinion of this Court.

A *fieri facias*, issued out of the Circuit Court of Washington county, as a Court of Equity, on the 29th of January, 1861, at the suit of the appellee, against Jacob and Amos Eakle, was returned on the 13th of March, 1863, on which day the appellants appeared and moved the Court to set aside the sale and quash the execution.   At the same term, the appellee moved for leave to amend the writ. Orders to show cause were passed, and after testimony taken the Court below ordered the writ of *fieri facias* to be amended, and overruled the motions to set aside the sale and quash the writ, from which several orders this appeal is taken.

Many points of much interest in practice have been raised by the briefs, but one or two only are necessary to be considered, for the decision of the cause.

Whether judicial writs are amendable or not, is not one of these.   The statute of *Jeofails* generally applies to proceedings at common law, and such as occur prior to the verdict or judgment.   If the further execution of the writ was suspended by the operation of the appeal bond, it is immaterial whether the writ was regular or irregular.

The execution having been issued on the 29th of January, 1861, and the judgment or decree rendered on the first Monday of July, 1860, all proceedings

under the latter must be regulated by the Code. The provisions of the Acts of 1826, ch. 200, and of the Act of 1840, ch. 232, are virtually condensed in Art. 5, sections 31 and 33, title appeals. There is no ambiguity in the meaning of those clauses, when read with due regard to their several subjects. The first refers to judgments, on which no execution has been issued ; in which case no stay or suspension of the right of execution occurs, unless cotemporaneously with the appeal, or "immediately," to use the language of the Code, "upon praying an appeal from any such judgment or decree, or suing out a writ of error" bond as therein prescribed, be entered into, and approved.

The next class is judgments on which any execution has been issued, " whether the same has been in part executed or not." In this section, the 33rd, " the filing of an appeal bond approved as aforesaid, shall stay any execution which has been issued on any such judgment or decree." Both presuppose the appeal to have been taken in due time. The appeal *per se*, operates no *supersedeas*, whether execution be issued or not. The defendant, who desires to protect himself from the effects of an execution, if he would avoid all risk of delay, must file the bond immediately, for until then he is exposed to execution. On the other hand, if he is willing to incur that risk, or unable to give bond earlier, he may defer it till the last moment before execution is consummated, provided he has appealed in time.

The non-payment of the costs, does not necessarily destroy the effect of the bond as a stay of execution. It is clear from the context, that provision was mandatory to the Sheriff, requiring him to stay all further proceedings, and deliver up the property upon receipt of the costs. It was for his protection, not the plaintiff's. He might refuse to suspend and deliver the property, until the costs were paid, or he might waive his claim. Other parties who

were fully indemnified by the bond, could not complain. As a general rule, the defendant and not the plaintiff, is liable for poundage fees. To enable the defendant to pay the costs, they must be ascertained by the Sheriff and demanded. In this case, according to the testimony, there was no demand of the costs, " but the Sheriff persisted in selling the lands under the execution." Under such circumstances, it would have been useless, if not impossible to tender the costs.

Neither is there any question as to the right of the defendant, in the execution, to appear at the return day, and move to quash the writ or set aside the sale for irregularity. *Moreland vs. Bowling,* 3 *Gill,* 501. *Nelson vs. Turner,* 2 *Md. Ch. Dec.,* 77. *Waters vs. Duvall,* 6 *G. & J.,* 79. *Waters vs. Peach,* 3 *G. & J.,* 412. The proceedings were " *in fieri,*" the defendant, and those claiming under him, subsequent to the decree, were liable to be evicted under a writ of *habere facias,* if the sale should stand without objection. Notwithstanding his conveyance, he had such an interest in the sale, as entitled him to the protection of the Court, if the sale was made without authority of law, or under such circumstances as necessarily involved a sacrifice.

These reasons being sufficient to warrant the reversal of the order of the Circuit Court for Washington County as a Court of Equity, passed the 11th of September, 1863, refusing to set aside the sale. We deem it unnecessary to consider the other points raised by the appellants.

*Order reversed, with costs to the appellant.*

(Decided December 5th, 1865.)