## MARTIN G. IMBACH, INC. *v.* DEEGAN, Sheriff of Baltimore City

[No. 51, October Term, 1955 (Adv.).]

116

*Decided November 4, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Donald N. Rothman* and *A. Frederick Taylor,* with whom were *Gordon, Feinblatt & Rothman* on the brief, for the appellant.

*Harrison L. Winter, Deputy Attorney General,* and *James H. Norris, Jr., Special Assistant Attorney General,*

with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This suit was brought by Martin G. Imbach, Inc. ("Imbach"), the appellant in this Court, against Joseph C. Deegan, the Sheriff of Baltimore City (the "Sheriff"), appellee here, to recover poundage fees alleged to have been illegally collected by the Sheriff. The present appeal (No. 51, October Term, 1955) is from a judgment for costs for the defendant entered by direction of Chief Judge Niles to give effect to the ultimate ruling previously made by Judge Cullen, which sustained the defendant's demurrer to the plaintiff's amended declaration, without leave to amend.

The case first came before this Court as No. 171 at the October Term, 1954, on an appeal by Imbach, a cross-appeal by the Sheriff, and a motion by the Sheriff to dismiss Imbach's appeal on the ground that it was not taken within the time allowed for appeal. Both appeals and the motion were fully argued. It developed during the argument in this Court that no judgment for costs for the defendant had been entered in the trial court. Hence there was no final judgment of that court to support Imbach's appeal, and that appeal was therefore dismissed. *Commonwealth of Pennsylvania v. Warren,* 204 Md. 467, 105 A. 2d 488; *O'Keefe v. Scott,* 198 Md. 310, 83 A. 2d 860; *Montgomery County Welfare Board v. Donnally,* 195 Md. 442, 73 A. 2d 505; *Goodman v. Clark,* 193 Md. 521, 69 A. 2d 496; *Penny v. Maryland State Police,* 186 Md. 10, 45 A. 2d 741.

The Sheriff's cross-appeal in No. 171 likewise failed for want of a final judgment and was dismissed; and the ground upon which his motion to dismiss Imbach's appeal in No. 171 was based was also untenable for the same reason.

After the question of the lack of a final judgment had been raised the appellee Sheriff filed a petition in the Superior Court asking that the docket entries of Decem-

ber 30, 1954 and February 9, 1955 be corrected by adding a judgment for costs for the defendant. The appellant Imbach filed an answer assenting to a change in the February 9, 1955 entry. After a hearing the petition was denied by Chief Judge Niles, who directed, instead, that a judgment for the defendant for costs be entered on the date (June 6, 1955) upon which the petition was heard and denied. The judgment so entered merely gave effect to Judge Cullen's final ruling on the demurrer to the amended declaration. The present appeal by Imbach is from that judgment. By agreement between the parties the briefs and arguments submitted in No. 171 of the October Term, 1954, are resubmitted on this appeal without further briefs or argument; and on that basis the present appeal has been advanced for determination.

Although the questions raised by the Sheriff's cross-appeal and motion to dismiss do not now require decision, we think that some comment on the proceedings which gave rise to them is appropriate.

On December 30, 1954, the trial Judge sustained the defendant's demurrer to the plaintiff's amended declaration *without* leave to amend, and duly so advised counsel for both parties by a letter of that date. On January 3, 1955, one of the attorneys for the plaintiff (Mr. Taylor) called upon the trial Judge to ask the reasons for his ruling and to request that he change the ruling from one denying leave to amend to one granting such leave. The trial Judge stated that he would do so and that he would later file a summary of the reasons for his ruling on the demurrer. He filed a memorandum opinion on February 9, 1955, which omitted any grant of leave to the plaintiff to amend. Plaintiff's counsel then made a second visit to the Judge (on February 14th) and reminded him of the previous conversation, and the Judge thereupon amended his opinion by adding leave to amend. It was not until after this change had been made and filed that the Sheriff or his counsel was notified of any change, actual or proposed, in the ruling of December 30th. It is evident that both parties regarded the ruling of

December 30th as a final judgment and believed that the thirty day time limit for an appeal ran from that date. It is equally clear that if the plaintiff's request had been made by a written motion (as would certainly have been appropriate), a copy thereof would have been required to be served on opposing counsel. (General Rules of Practice and Procedure, Pt. II, V (Service of Pleadings and Other Papers), Rules 1 (a) and 1 (c).) The fact that the request was oral did not dispense with the need for notice as a matter of fairness as well as propriety.

We have no doubt that the omission of notice on the part of plaintiff's counsel was unthinking rather than deliberate and that the Judge's action in granting the plaintiff's request for a change in the ruling without any showing that the defendant's counsel had been notified of the request was also inadvertent. The change in the ruling was, however, substantial and clearly it should not have been made without notice to the defendant's counsel of record and an opportunity to object and be heard, if such counsel so desired.

The situation became somewhat further confused after the granting of leave to amend because counsel for the plaintiff, after studying the trial court's opinion which was filed on February 9th, reached the conclusion that any new amendment of the declaration would serve no useful purpose and thereupon filed a petition (of which the defendant's counsel were notified) seeking to have the docket entries "corrected" by striking out the order of December 30, 1954 and by having it in practical effect restated *nunc pro tunc* as of February 9, 1955.* The defendant answered and opposed the petition on the grounds (1) that the order of December 30th had become enrolled prior to February 9th and was beyond the revisory power of the court and (2) that the proceedings subsequent to December 30th were not binding on the defendant since he did not participate therein and had no knowledge or

---

* Actually the existing docket entry of February 9th was substantially identical with the proposed "correct" docket entry. Each of them denied leave to amend. The difference was in the addition to the court's opinion of February 9th, which was made on February 14th.

notice thereof. The court entered an order on February 28, 1955 in accordance with the plaintiff's petition. This was the order from which the appeal and cross-appeal were taken in No. 171 at the October Term, 1954, and those appeals have been dismissed because of the lack of a final judgment.

We now approach the merits of the controversy. Since the case was heard upon a demurrer to the amended declaration, we must turn to that declaration for a statement of the facts. The declaration shows that the Clerk of the Superior Court gave to the defendant, as the Sheriff of Baltimore City, for execution a writ of *fieri facias* issued in a named case in that court, and then alleges that "the Defendant, and his Deputies did not execute the said writ, as the judgment upon which it was issued and all costs were paid upon the service of the writ, whereupon the Defendant made no levy, schedule, or return of goods levied upon, and for that in collecting costs, the said Defendant illegally demanded and collected, over the protest of the Plaintiff, poundage fees in the amount of $636.35, inasmuch as he had not earned them in accordance with the statute made and provided for such fees, and the said Defendant has refused to return the said sum of $636.35 illegally collected as poundage fees, although demand has been made therefore." (Sic.)

Strictly, these are the only facts properly alleged. Of course, only well pleaded facts, and not the pleader's conclusions of law, are admitted by the demurrer. In this case and largely because of the allegations as to what happened after the deputy "served" the writ, the allegation that he did not "execute" it seems to fall into the category of a conclusion of law. The rather scanty facts expressly stated in the declaration may be somewhat amplified by inferences from them. Thus the learned trial Judge stated in his memorandum opinion that "It is clear that the presence of the sheriff ready to take possession and with the plaintiff's chattels within his power and control, was the coercing factor which satis-

fied the judgment of the Court." The judgment referred to is, of course, that for the enforcement of which the writ was issued. (It was a judgment of the Superior Court of Baltimore City which had been affirmed on appeal by this Court three days before the writ was issued. See *Martin G. Imbach, Inc. v. Tate*, 203 Md. 348, 100 A. 2d 808.) We do not regard it as pressing inferences too far to conclude—and we may add that statements and admissions in the briefs and oral arguments before us indicate that such conclusions are not in dispute—(1) that when the Sheriff's deputy went to Imbach's place of business there were on the premises chattels belonging to Imbach of a value at least equal to the full amount of the judgment (including interest and costs) and the full amount of the poundage fees demanded; (2) that such property was visible to the deputy; (3) that there was no obstacle to his taking actual, physical possession of such property; (4) that he threatened to take such actual possession, but at Imbach's request and because of the payments next referred to, did not do so; (5) that instead of making such actual seizure he received payment of (a) the full amount of the judgment (including interest and costs) for the enforcement of which the writ of *fi. fa.* was issued and (b) the full amount of the poundage fees to which the Sheriff would be entitled for execution of the writ[*]; and (6) that Imbach paid the latter amount under protest and to avoid actual seizure of its property.

These two questions arise on the above state of facts:

1. Is the Sheriff entitled to poundage fees where he serves a writ of *fi. fa.* on a judgment debtor and, as a result thereof, but without making any actual seizure, return or sale of property of the debtor, collects the full amount of the judgment?

2. If the Sheriff is not entitled to such fees, does payment thereof by the judgment debtor under protest and in order to avoid a threatened seizure of his property con-

---

[*] It appears (but not from the declaration) that, at Imbach's request, the Sheriff's deputy accompanied a representative of Imbach to Imbach's bank and there received certified checks in payment of these amounts.

stitute a "voluntary" payment, for which no recovery can be had?

1. *Is the Sheriff Entitled to Poundage?*

The Sheriff relies upon Code (1951), Article 36, Section 25 as establishing his right to poundage. At common law no such right existed. In England the matter was dealt with by statutes passed in 1444, 1587 and 1716; but none of these statutes has been regarded as adopted or in force in Maryland. *Cape Sable Company's Case*, 3 Bland 606, 631. In that case Chancellor Bland in an interesting and exhaustive opinion reviewed English and Maryland statutes and decisions dealing with the sheriff's right to poundage fees and the persons liable therefor. Neither the *Cape Sable Company's Case* nor any other Maryland case to which we have been referred directly determines the precise question with which we are confronted—whether or not an actual seizure of property is essential to the sheriff's right to poundage.

The history of statutes in Maryland dealing with poundage fees or fees of like nature (even though not designated as poundage) goes back to provincial times, but involves relatively few Acts of the General Assembly. We shall refer to some of these statutes briefly later on.

The present statute, relied upon by the Sheriff, reads as follows:

"Art. 36. Fees of Officers.

"Section 25. The Sheriff shall have as poundage fees computed upon the value of the personal property or the amount of the debt whichever is less for levying an execution at the rate of seven and a half per cent on the first Twenty-six Dollars and Sixty-seven Cents and at the rate of three per cent on the residue, but if execution be laid on any interest in lands only one-half of the poundage fees shall be charged, and if laid upon lands and the lands be not sold by the Sheriff he shall charge only one-fourth of the poundage fees aforesaid and if upon personal property and the same be not sold by the Sheriff

he shall charge three per cent as mentioned above. Provided, however, that in addition to the above fees, the Sheriff of Baltimore City and the Sheriff of Baltimore County shall receive for his services in serving each writ of Fieri Facias a fee of One Dollar and Fifteen Cents ($1.15), and the Clerk of the Court shall not issue said writ until the person, firm or corporation ordering the issuance of the same shall pay said fee to said clerk, which fee shall be paid to the Sheriff when said writ was delivered to him."

Poundage fees are ordinarily payable by the defendant against whom execution is issued. *The Cape Sable Company's Case, supra; Howard v. The Levy Court,* 1 H. & J. 558; *Eakle v. Smith,* 24 Md. 339, 362; *Gilmor v. Brien,* 1 Md. Ch. 40. There is no claim that this general rule is not applicable in this case. The two cases last cited and *Gurley v. Lee,* 11 G. & J. 395, also show that poundage fees are not a part of the costs of suit.

Since the adoption of Section 2 of Chapter 59 of the Acts of (November) 1790, the rates at which poundage fees are to be computed on lands taken and sold upon execution have been one-half of the rates applicable to personal property so taken and sold. Except for a period of two years (from 1941 to 1943) there has also been this difference between executions against real and personal property: that if lands were not sold, poundage rates were only one-half of what they would have been if there had been a sale; but in the case of personal property, no such reduction was or is made because of there not being any sale. (Acts of 1941, Ch. 314; Acts of 1943, Ch. 331). Thus, insofar as personal property is concerned, the early cases holding that the absence of a sale does not impair the sheriff's right to poundage are fully applicable. Among these cases are *The Cape Sable Company's Case* and *Gurley v. Lee,* both cited above.

There is thus no question of the amount of the poundage fees if they are payable at all; and the vital question

on this phase of the case is, what constitutes execution of the writ?

Before going further we may pause to observe that the term "poundage" is derived from the name of British units of weight or money and means "a tax, commission, rate, etc. of so much per pound sterling or pound weight" (*New Century Dictionary*) or "the percentage of a sale allowed to a sheriff or other officer who is authorized to sell goods on execution or foreclosure of a lien" (*Radin's Law Dictionary*) and thus does not connote an impounding. Whether or not an actual taking of possession of the defendant's property is essential to establish a sheriff's right to poundage fees accordingly depends upon other terms of the statute.

If we go back to the provincial statute of 1763 (Ch. 18), we find that fees in the nature of poundage fees, though not so designated, were provided for the levying of execution, and Acts of the General Assembly of the State passed in 1777, 1778 and 1779 dealt with the subject. Chapter 25 of the Acts of (November) 1779 provided for the fees to be charged by the sheriff for various services. It provided that his fees for attachments, replevins and *fi. fas.* should be the same as upon execution. Section 5 of this Act limited the poundage fees to be exacted upon executing a writ of *capias ad satisfaciendum* (execution against the person of the defendant) to the real amount of the debt. Section 6 made this limitation applicable to "the service of any execution for money or tobacco" and also fixed the rates for poundage fees. *Maddox v. Cranch*, 4 H & McH. 343; *Howard v. The Levy Court*, 1 H. & J. 558. Chapter 59, Section 2 of the Acts of 1790, changed somewhat the rates at which poundage fees were to be computed.

No changes relating to poundage fees bearing upon the question here at issue appear to have been made between 1790 and the codification of the Public General Laws by the Code of 1860. Section 27 of Article 38 of that Code continued to provide for "the same fees as on execution" for "all goods and chattels which any sheriff

shall attach and take into his possession or wherewith he shall be chargeable." Section 28 of that Article provided that "The Sheriff shall have as poundage for levying an execution" the same rates as are still prescribed by Section 25 of Article 36 of the 1951 Code and also provided for lesser rates "if the execution be laid on any interest in lands," just as in the present statute. The provisions of the 1860 Code were embodied without change in the Code of 1888 as Sections 28 and 29 of Article 36.

Section 29 of Article 36 of the Code of 1888 remained unchanged until 1933. By Chapter 177 of the Acts of that year an amendment was made under which the sheriff of Baltimore City is to receive "for his services in serving each writ of fieri facias a fee of $1.15 to be collected by the clerk of the court from the party ordering the issuance of the writ, and a like provision applicable to Baltimore County was made by Chapter 456 of the Acts of 1939.

Chapter 314 of the Acts of 1941 amended the statute by adding a provision that if the execution is laid "upon personal property and the same be not sold by the sheriff, he shall charge only one-half of the poundage fees aforesaid." This amendment was repealed by Chapter 331 of the Acts of 1943, which restored the 3% rate, even though the personal property levied upon was not sold by the sheriff.

Chapter 331 of the Acts of 1943 also amended the poundage statute by inserting a clause specifying that poundage fees are to be computed upon the value of the personal property or the amount of the debt whichever is less." The limitation based upon the value of the property was new; that based upon the amount of the debt in effect restored a similar limitation which had been contained in Chapter 25, Sections 5 and 6 of the Acts of (November) 1779, but which seems to have been lost at the time of the 1860 codification.

In *Beatty v. Chapline*, 2 H. &. J. 7, decided in 1806, this Court said (at page 9) : "There are four essential

acts necessary to be done to perfect the execution of a *fieri facias,* in order to divest the property of personal chattels out of the defendant, and to transfer them to another. 1. Seizure of the goods by the sheriff. 2. The appraisement. 3. Public notice of the sale. 4. The sale of the goods by the sheriff after public notice." The amendments of the statute in 1941 and 1943 dealing with the effect of no sale being made emphasize that the law is today what it was held to be long before the 1941 amendment—that a sale of personal property is not necessary in order to establish the sheriff's right to poundage fees in full. We may also assume for purposes of this case that the absence of an appraisement and of a notice of sale constitutes no bar to his claim; but the requirement for a seizure of goods still remains.

We do not understand that the Sheriff controverts this view. His contention is that "the Sheriff made sufficient 'levy of execution' to bring him within the provisions of the statute, because the service of the writ and the presence of the Sheriff ready to take possession of the Appellant's chattels were the coercing factors which brought about a satisfaction of the judgment."

The Sheriff relies upon *Gimenez v. Great Atlantic & Pacific Tea Co.,* 275 N. Y. S. 948, 224 App. Div. 485. There the sheriff had a writ in hand issued at the plaintiff's direction based upon a judgment which had been affirmed by the Court of Appeals of New York. The sheriff's counsel told the plaintiff's counsel that an actual levy seemed unnecessary and then communicated with the defendant's counsel with a view to effecting collection without harassing the defendant by closing its stores. The defendant's counsel at first said the judgment would be paid in the course of a few days, but when informed that this would not be satisfactory he "asked that levy be withheld until 11 a.m. the next day, stating that the judgment would be paid in full, and that the sheriff's fees would be satisfied." Levy was withheld in accordance with this agreement. The New York

statute entitled the sheriff to poundage for "collecting money by virtue of an execution."

The Appellate Division laid stress upon the language of the statute "by virtue of an execution" and affirmed an order denying the defendant's motion for a refund of poundage fees which it had paid under protest. The Court based its ruling upon two grounds: (1) the agreement; and (2) "the further basis that the right to poundage has long been recognized in the practice under such circumstances."

In the instant case, our statute allows poundage fees "for levying an execution", not "for collecting money by virtue of an execution", as does the statute involved in the *Gimenez* case. In the next place, in the instant case, there was no such agreement to pay poundage fees as there was in the *Gimenez* case, and finally there is no showing of any such practice in this State as the Court found there was in New York. The *Gimenez* case, therefore, does not seem to us to be applicable to the present case.

Maryland authority, we think, supports the view that the term "levying an execution" as used in our statute contemplates an actual seizure. See *Beatty v. Chapline*, above cited, and the following cases: *Byer v. Etnyre*, 2 Gill. 150, in which this Court said that "by common use and acceptation, the term 'levied' when thus used by constables, imports a seizure*"; *Textor v. Shipley*, 86 Md. 424, 38 A. 932; *Jarboe v. Hall*, 37 Md. 345; and *Waters v. Duvall*, 11 G. & J. 37. See also *Poe, Pleading and Practice*, Vol. 2, *Tiffany's Ed.*, 1925, Sec. 668, and a comprehensive article on *"Execution and Fi. Fa. in the People's Court of Baltimore City"* by Chief Judge Rhynhart of that Court in 14 Md. Law Review 203, at 212.

The language of Code (1951) Article 36, Section 25, relating to fees for "serving each writ of Fieri Facias"

---

* Constables may serve and levy executions issued by a justice of the peace in the same manner as sheriffs are authorized to do. Code (1951), Article 20, Section 5.

in Baltimore City or Baltimore County seems to recognize a clear distinction between the act of serving the writ and the act of "levying an execution" for which poundage fees are allowed.

The ancient language of Section 24 of the same Article which is derived from Chapter 25 of the Acts of 1779 and which gives to the sheriff "the same fees as on executions" for "all goods and chattels which" he "shall attach and take into his possession or wherewith he shall be chargeable" strongly reinforces the view that an actual seizure is required as the basis for poundage fees on any form of execution. Though a sheriff might be chargeable for neglect for failing to execute a writ promptly, we do not suppose that it would be contended that he would be chargeable for goods of which he never took possession.

The case in this Court which seems to come closer than any other to supporting the Sheriff's position is *Horsey v. Knowles,* 74 Md. 602, 22 A. 1104, where a general discussion of what constitutes a valid levy will be found. In that discussion, after noting that there was some diversity of opinion as to what constituted a valid levy on personal property, the Court said: "But all the cases seem to agree in holding that it is not sufficient that the officer merely makes an inventory of the property, and indorses the levy upon his writ, without the presence or view of the property. He must have the property in view, and where he can exercise control over it; * * * and especially is this required where, by the law, it is made his duty to appraise the property, in order to avoid an excessive seizure, or to assure himself of the sufficiency of the levy to satisfy the execution. It is said to be sufficient that after having the property within his view, and where he can control it, he does profess to levy upon and to assume control of the property by virtue of the execution, and with the avowed purpose of holding the property to answer the exigencies of the writ." There is nothing in the present case to show that the deputy sheriff professed to make any levy upon, or to assume

control of, any property with the avowed purpose of holding it to answer the exigencies of the writ. On the contrary, the facts, as we understand them, indicate that he threatened to take such action, but that he actually refrained from doing so.

We conclude that a seizure was necessary in order to entitle the Sheriff to poundage fees and that the facts alleged show that there was not a seizure.

2. *Was the Payment of Poundage Fees Voluntary?*

The above question was squarely raised by the defendant's demurrer, but the learned trial judge found it unnecessary to decide it because of his holding that the Sheriff was entitled to poundage. Since we disagree with that holding, the question of voluntary payment requires decision.

Although the general rule is that this Court shall not decide any point or question which does not clearly appear to have been tried and decided by the Court below (Rule 9 of our Rules and Regulations Respecting Appeals, derived from Chapter 117 of the Acts of 1825) there are some types of cases which have long been regarded as outside its scope or as exceptions to this rule. Among the types of cases so excluded or excepted are those presented on demurrer; and we are therefore not precluded in this case from passing upon this second question. Other cases which are also excepted or excluded are those arising on motions in arrest of judgment which are considered to be on the same footing as demurrers as regards this rule. See as illustrative of the exceptions: *Baltimore City v. Austin,* 95 Md. 90, 93-94, 51 A. 824; *Muir v. Beauchamp,* 91 Md. 650, 658, 47 A. 821; *Bragunier v. Penn,* 79 Md. 244, 29 A. 12; *Shaeffer v. Gilbert,* 73 Md. 66, 72-73, 20 A. 434; *Smith v. State,* 66 Md. 215, 219, 7 A. 49; *Keller v. Stevens,* 66 Md. 132, 134, 6 A. 533; *Smith v. Wood,* 31 Md. 293, 301-302; *State, use of Charlotte Hall School v. Greenwell,* 4 G. & J. 407, 416; *Poe, Pleading and Practice,* Vol. 2, Tiffany's Ed., Sec. 838.

The Sheriff contends that the judgment and costs are distinct from the poundage fee and that he therefore can-

not levy on property for his poundage fee if the debt and costs are paid, but must resort to a separate suit. From this he argues that Imbach's property was not under immediate threat of seizure and hence that any payment must be deemed to have been made voluntarily. On the question of the voluntary character of the payment, he then relies largely upon *Lester v. City of Baltimore,* 29 Md. 415; *Furman v. Lanahan,* 159 Md. 1, 149 A. 465, which cites and relies *inter alia* upon a statement in *Baltimore v. Lefferman,* 4 Gill. 425 (at 436); *Walk-A-Show, Inc. v. Stanton,* 182 Md. 405, 35 A. 2d 121; *Magness v. Loyola Federal Savings & Loan Ass'n,* 186 Md. 569, 47 A. 2d 769; and *Wasena Housing Corp. v. Levay,* 188 Md. 383, 52 A. 2d 903.

The Sheriff's contention that Imbach was not under any immediate threat of seizure of his property seems to us to overlook the facts that his deputy was present, that tangible property belonging to Imbach was there and could readily have been seized and that the deputy threatened to seize it unless *all* amounts claimed—judgment, interest, costs *and* poundage—were paid at once. The total amount for which the deputy threatened to levy execution was in excess of $20,000 (as the amount of the poundage fee shows), and it hardly requires the exercise of imagination to deduce that Imbach stood to suffer substantial inconvenience and loss from the interruption to its business which would result from the seizure of its property of such a value. Imbach had no legal remedy which would have been available in time to prevent the threatened seizure, even though the Sheriff may have been wholly without right to make it for poundage alone. We do not, of course, suggest that his claim for poundage would have been strengthened if he had made an unwarranted seizure.

There is a very full review of the authorities bearing on the question here involved in *Jones v. Sherwood Distilling Co.,* 150 Md. 24, 132 A. 278. In that case excessive charges were demanded and paid for the release of goods from a warehouse. They were paid in order to

obtain the release of the goods in time for shipment for export on board a certain vessel sailing within a very few days. The payment was held to have been made under compulsion. We think that the same principle governs payments to prevent the seizure of goods as payments to obtain their release. *Valpy v. Manley,* 50 Eng. Com. Law 592.

It would be useless repetition for us to review the authorities set out in the *Sherwood Distilling Co.* case, and little need be said to supplement it. As Judge Walsh said in that opinion: "It is difficult, if not impossible, to imagine a case in which some legal remedy for the recovery of goods would not be open to their owner, but the law does not require the owner to adopt such a remedy unless it is an adequate one, and if the use of the remedy would cause great inconvenience or loss it is not considered adequate."

The cases above cited as those largely relied upon by the appellee are consonant with this statement of the rule. In the *Lester* and *Lefferman* cases there was ample opportunity to challenge the demands by litigation and there was no threat of immediate seizure of property. In the *Walk-A-Show, Inc.* case, there was not even any protest at the time of the payment of the license fees there sought to be recovered; and this Court, after reviewing the evidence pointed out that counsel for the appellant had "formed an opinion on the subject in controversy, and had done so in ample time before payment to have had his professional opinion tested in court, and thus to have avoided the consequences if an adverse ruling had resulted." In *Furman v. Lanahan,* it held that there was no showing that the making of the payment there involved saved the plaintiff from any greater loss or damage than he would have sustained if he had not made the payment. In the *Magness* case, the concluding sentence in Judge Markell's opinion is: "Thirteen years is time enough to litigate a question of law and pursue a suspicion of facts."

In the *Lester, Lefferman* and *Wasena Housing Corp.* cases, *supra,* relied upon by the appellee, the availability of injunction proceedings to prevent the enforcement or collection of an illegal or allegedly illegal tax or charge was held to make the payments voluntary rather than compulsory, notwithstanding that they were made under protest.

All of the cases recognize that a payment under duress is not a voluntary payment. Without prolonging this opinion further, we are of the view that there was no adequate legal remedy available to the appellant to prevent the threatened seizure of its property, that such seizure, if made, would have caused the appellant serious loss or inconvenience, and hence that the payment under protest was involuntary within the rule recognized in the *Sherwood Distilling Co.* case, *supra,* and that, in the language of the opinion in the *Magness* case, *supra,* it was "made to emancipate * * * property from duress."

It follows that the judgment appealed from must be reversed and the case remanded for further proceedings. The Sheriff is, of course, entitled to plead to the declaration, and the plaintiff will have the burden of establishing the facts alleged in the amended declaration.

*Judgment reversed with costs and case remanded.*