# EDWARD TAUB v. STATE OF MARYLAND

[No. 123, September Term, 1982.]

*Decided August 10, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*James Robert Miller,* with whom were *Miller & Steinberg* on the brief, for appellant.

*Carmina Szunyog, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

*Amicus curiae* brief of Attorneys for Animal Rights and Attorneys for Animal Rights-Boston, Inc. filed. *David Favre, Ruth Flaherty, Karen Levitt, Sarah Luick, Patricia Petow, Wilma Rosenberg, Steven M. Wise* and *Edward L. Genn* on the brief.

COUCH, J., delivered the opinion of the Court.

The issue in this case is whether the animal cruelty statute, Maryland Code (1957, 1976 Repl. Vol.), Article 27, § 59, is applicable to a research institute conducting medical and scientific research pursuant to a federal program. For reasons to be discussed herein we hold that it is not.

Dr. Edward Taub was the chief scientific investigator in charge of animal research at the Institute for Behavioral Research (IBR) which operated a laboratory in Silver Spring, Maryland. This laboratory was funded by the National Institutes of Health (NIH) under a series of grants outlining the specific animal research to be done by the laboratory. The United States Department of Agriculture (USDA) was charged with making periodic announced and unannounced inspections of the laboratory pursuant to the Federal Animal Welfare Act, 7 U.S.C.A. §§ 2131-2156 (1973 and 1976 Supp.).

During the period May-September, 1981, Dr. Taub, under an NIH grant, was conducting research to gain information to help retrain human beings afflicted with a stroke. In an effort to learn to retrain limbs damaged by a stroke, Dr. Taub simulated the effects of a stroke by creating an animal model of the conditions in humans. This was accomplished by surgically abolishing all sensation in the limb of

a monkey; thereafter, experiments could be performed to retrain that limb. The surgical procedure is known as somatosensory deafferentation.

Acting on information furnished by a former employee of the laboratory, Montgomery County police investigated conditions therein, seizing a colony of monkeys pursuant to an order of court. Thereafter, in January, 1982, the county State's Attorney filed a seventeen count information against Dr. Taub charging him with violation of Maryland Code (1957, 1976 Repl. Vol.), Article 27, § 59, with regard to seventeen different monkeys. Following a trial in the District Court, Dr. Taub was found guilty of failing to provide necessary veterinary care for six of the monkeys and was acquitted of all other charges.[1] Upon appeal to the circuit court, a jury found Dr. Taub guilty of one charge of failing to provide necessary veterinary care for one monkey known as Nero.

We granted certiorari to consider a question of public importance.

While Dr. Taub has raised several issues concerning the constitutionality of section 59, preemption of this section by the Federal Act, and certain alleged errors in the trial court's evidentiary rulings, we believe the matter may be disposed of by our conclusion that section 59 simply is inapplicable to Dr. Taub and the laboratory and thus the charges against him should be dismissed. We recognize that this issue was not raised previously although it was discussed at oral argument. Under Maryland Rule 813 a our scope of review is "ordinarily" limited to questions raised and decided by the trial court. Nevertheless, as the rule employs the term "ordinarily," it permits exceptions and we have occasionally decided cases on issues not previously raised. *See, e.g., Squire v. State,* 280 Md. 132, 368 A.2d 1019 (1977); *Bartholomey v. State,* 260 Md. 504, 273 A.2d 164 (1971), *vacated in part and remanded on other grounds,* 408 U.S. 938, 92 S.Ct. 2870, 33 L.Ed.2d 759 (1972), *reh'g denied,*

---

1. State of Maryland v. Edward Taub, Criminal Number 11848-81.

409 U.S. 901, 93 S.Ct. 180, 34 L.Ed.2d 162 (1972); *Martin G. Imbach, Inc. v. Deegan,* 208 Md. 115, 117 A.2d 864 (1955). Because our conclusion as to this issue is completely dispositive of the case, we shall consider it.

By Chapter 198 of the Laws of Maryland, 1890, the legislature, for the first time, made it a misdemeanor for

"any person who wilfully sets on foot, instigates, engages in, or in any ways furthers any act of cruelty to any animal, or any act tending to produce such cruelty, or by any act, conduct, neglect, or omission wilfully causes, permits or suffers any animal to undergo any species of torture or cruelty. . . ."

Torture and cruelty were thereafter defined "to include everything whereby *unjustifiable* physical pain, suffering, or death [w]as caused or permitted. . . ." (Emphasis added.)

In 1904, this chapter became sections 57 and 58 of Article 27 without change. The next legislative action of significance, pertinent to the issue before us, occurred in 1955, Chapter 19, when a specific penalty for violation of the section was provided.[2] In 1957, by Chapter 296, the legislature removed from the penalty provision the language "in the discretion of the Court." By Chapter 718 of the Laws of 1963, the penalty provision was changed to provide for up to ninety days imprisonment. The legislature increased the fine provision to $1,000.00, in 1966, by Chapter 333. In 1972, by Chapter 719, the legislature repealed the pertinent sections and enacted a new section 59 to read as follows:

"Any person who (1) overdrives, overloads, deprives of necessary sustenance, tortures, torments, cruelly beats, mutilates or cruelly kills; or (2) causes, procures or authorizes these acts; or (3) having the charge or custody of an animal, either as owner or otherwise, inflicts unnecessary suffering or pain upon the animal, or unnecessarily fails to provide the animal with proper food, drink, air, space, shelter or protection from the weather, is guilty. . . ."

2. Fine not to exceed $100.00 or imprisonment not to exceed 30 days, or both in discretion of the Court.

Section 62 was amended to define "torment", otherwise it remained essentially unchanged. In 1975, by Chapter 716, section 59 was repealed and reenacted with the language as it was at the time of the inception of this case, as set forth below:

> "Any person who (1) overdrives, overloads, deprives of necessary sustenance, tortures, torments, cruelly beats, mutilates or cruelly kills; or (2) causes, procures or authorizes these acts; or (3) having the charge or custody of an animal, either as owner or otherwise, inflicts unnecessary suffering or pain upon the animal, or unnecessarily fails to provide the animal with nutritious food in sufficient quantity, necessary veterinary care, proper drink, air, space, shelter or protection from the weather, is guilty of a misdemeanor and shall be punishable by a fine not exceeding $1,000 or by imprisonment not to exceed 90 days, or both. Customary and normal veterinary and agricultural husbandry practices including but not limited to dehorning, castration, docking tails, and limit feeding, are not covered by the provisions of this section. In the case of activities in which physical pain may unavoidably be caused to animals, such as food processing, pest elimination, animal training, and hunting, cruelty shall mean a failure to employ the most humane method reasonably available. It is the intention of the General Assembly that all animals shall be protected from intentional cruelty, but that no person shall be liable for criminal prosecution for normal human activities to which the infliction of pain to an animal is purely incidental and unavoidable."

It can readily be seen that the legislature has consistently been concerned with the punishment of acts causing "unnecessary" or "unjustifiable" pain or suffering. Fur-

thermore, clearly the legislature recognized that there are certain normal human activities to which the infliction of pain to an animal is purely incidental and unavoidable and, in such instances, section 59 does not apply.

In addition, we are confident that the legislature was aware of the Federal Animal Welfare Act which was, in part, to insure that animals intended for use in research facilities would be provided humane care and treatment. Under the terms of that Act, a research facility is required to register with the Secretary of Agriculture (7 U.S.C.A. § 2136 (1973, 1976 Supp.)), to comply with standards promulgated by the Secretary to govern the humane handling, care, and treatment of animals (§ 2143 (1976 Supp.)), is subject to inspection of their animals and records (§ 2147 (1973)), and is subject to civil and criminal penalties, as well as a cease and desist order for any violation of the Act (§ 2149(b) and (c) (1976 Supp.)). Thus the Act provides a comprehensive plan for the protection of animals used in research facilities, while at the same time recognizing and preserving the validity of use of animals in research (§ 2146 (1973 and 1976 Supp.)).

Moreover, the involved laboratory was subject to detailed regulations of the Secretary of Agriculture (9 C.F.R. §§ 3.75-3.91 (1978)) which set forth specifications for humane handling, care, treatment, transportation of nonhuman primates, and for veterinary care. With respect to the latter, again provision is made for a recognition and preservation of the validity of research purposes.

Lastly, being a recipient of an NIH grant, the laboratory became subject to pertinent regulations thereof governing the care and treatment of animals used in the research which was the subject of the grant (U. S. Dept. of Health, Education, and Welfare, Public Health Service, NIH Publication No. 80-23, Guide for the Care and Use of Laboratory Animals (rev. 1978, reprinted 1980)).

Accordingly, we do not believe the legislature intended section 59 of Article 27 to apply to this type of research activity under a federal program. We shall, therefore,

reverse Dr. Taub's conviction and remand this matter to the Circuit Court for Montgomery County with instructions to dismiss the criminal information.

In light of the above, the State's motion to strike is denied.

> *Judgment reversed and case remanded to the Circuit Court for Montgomery County with instructions to dismiss the information. Costs to be paid by Montgomery County.*