596 A.2d 1079

**SHANTY TOWN ASSOCIATES LIMITED PARTNERSHIP**

v.

**DEPARTMENT OF the ENVIRONMENT.**

No. 1139, Sept. Term, 1990.

Court of Special Appeals of Maryland.

Oct. 15, 1991.

**2**

Raymond S. Smethurst, Jr. (Barbara R. Trader and Adkins, Potts & Smethurst, on the brief), Salisbury, for appellant.

Nancy W. Young, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before GARRITY, CATHELL and DARLENE G. PERRY, Specially Assigned, JJ.

DARLENE G. PERRY, Judge, Specially Assigned.

Appellant, Shanty Town Associates Limited Partnership (Shanty Town), appeals from an order of the Circuit Court for Worcester County affirming the denial by Appellee, Maryland Department of the Environment (MDE), of Shanty Town's application for increased sewer service to support the proposed expansion of its West Ocean City commercial facilities.

The controversy centers on the interpretation of a consent order entered into by the Maryland Department of Health and Mental Hygiene (Department)[1] and the Worcester County Sanitary Commission (WCSC) which restricts access to the sewer system. MDE construed the consent order as barring Shanty Town's request for addi-

---

**1.** At the time of Shanty Town's initial application for expanded sewer service in 1983, responsibility for supervision and control over matters concerning the physical condition of State waters was vested in the Department of Health and Mental Hygiene. *See* Md.Code Ann. Health–Environmental § 9–319 (1982). Subsequently, however, the legislature created the Department of the Environment, which assumed authority over these matters effective July 1, 1987. *See* Md. Code Ann. Environment §§ 9–252, 9–253, 9–319 (1987). Accordingly, the Department of the Environment was substituted as a party shortly thereafter. In this opinion, reference to "the Department" is to the Department of Health and Mental Hygiene and reference to "MDE" is to the Department of the Environment.

tional sewage discharge. The Circuit Court affirmed, ruling that the agency decision was supported by substantial evidence. We now reverse the Circuit Court.

The consent order at issue was the product of a WCSC plan to install a central sewage collection system for the West Ocean City area. Such a system was needed to replace the existing private on-site septic systems which had become a major sanitation problem by the late 1970's. Due to the considerable expense involved, however, WCSC was forced to seek aid from the federal government in the form of an Environmental Protection Agency (EPA) construction grant. The EPA conducted a comprehensive study addressing the potential environmental impact of the proposed system, concluding that the system would be environmentally sound only if excessive development within the 100–year floodplain and the wetlands was prevented once it was in place.

As a result, the EPA conditioned approval of the grant on restrictions limiting access to the system. Those restrictions were formalized in a duly executed Assistance Agreement (Agreement) between the EPA and WCSC. As a further condition, the EPA sought assurance that state authorities would enforce the terms of the agreement. The EPA agreed that this demand would be met should the Department and WCSC enter into an appropriate consent order. After a series of meetings attended by representatives of the Department, WCSC, and numerous environmental groups, the consent order was signed on June 28, 1983. A construction grant was then issued by the EPA and the system ultimately installed.

The consent order begins with a preamble setting forth a six-part policy embodying the desired restrictions on sewer service. The order also requires that WCSC prepare a map depicting the respective boundaries of the areas affected by the restrictions, i.e.; the wetlands and the 100–year floodplain of the West Ocean City Sanitary District. The remaining provisions relevant to this appeal set forth the standards upon which an application for sewer service is to be

considered and the procedure by which an unsuccessful applicant may pursue a grievance.[2]

The Shanty Town property consists of an island and causeway of approximately 4.5 acres situated within the West Ocean City Sanitary District. It is zoned B–2 (General Business District). The property is currently improved with a complex of interconnected shops and restaurants as well as boat mooring facilities, with the remainder of the land consisting primarily of a parking lot. These improvements were constructed in 1974–75. Shanty Town seeks to expand the complex by constructing a condominium hotel and adding approximately 20,000 feet of new store space. This case arose when Shanty Town applied for and was refused the additional sewer service that the proposed expansion would require.

It is undisputed that the Shanty Town property lies within the 100–year floodplain located in the geographical area encompassed by the consent order. The parties likewise agree that the Department acted within its authority in executing the consent order and that the same is controlling in this case. *See Department of Environment v. Showell,* 316 Md. 259, 558 A.2d 391 (1989).[3] The conflict herein, rather, involves the interpretation of two of the six policy

---

2. These provisions state:

Section 2a. Through delegation of authority, the Health Officer of Worcester County will be the responsible party in deciding, based on the sewer service policy presented heretofore and on the information contained in the approved map and its accompanying underlying structure, whether a structure or a parcel of platted land is allowed sewer service.

Section 2b. Should any aggrieved applicant challenge the decision of the Health Officer, the matter will be referred to the Director of Maryland's Water Management Administration (WMA) for review. Any appeal beyond the level of WMA will be administered in accordance with the procedures of the Administrative Procedure Act.

3. In *Showell,* the Court of Appeals held that the Department had the implicit authority under its general statutory powers to execute the consent order as necessary in furtherance of the prevention of water pollution. 316 Md. at 271, 558 A.2d at 397.

provisions contained in the consent order. Those provisions read as follows:

*Paragraph A.*

Sewer service will not be permitted for the undeveloped lots in the 100–year floodplain as defined by the Federal Emergency Management Administration (FEMA), unless the lots were platted as building lots prior to June 1, 1977. Development on a lot for which sewer service will be permitted will be limited to one equivalent dwelling unit (EDU). For the purpose of this Order, an EDU is defined as any non-single family dwelling unit having a sewage flow associated with a residential dwelling unit (280 gallons per day).

\* \* \* \* \* \*

*Paragraph C.*

No sewer service or connections will be provided for any structure in the floodplain area not included in the West Ocean City service area as defined in the March, 1982, edition of Amendment #1 to the North Central Ocean Basin (NCOB) Wastewater Facilities Plan.

The initial decision on Shanty Town's application was made by Dr. Donald Harting, Deputy State Health Officer, who denied additional sewer service on the ground that the property had not been previously platted into individual lots (i.e., prior to 1977). Shanty Town appealed to Richard B. Sellars, Jr., Director of the Water Management Administration (WMA), who had been an active participant in the drafting of the consent order. Sellars affirmed Dr. Harting in a written response, adding that the drafters never intended to provide expanded service to developed lots. The next step in the process was a full evidentiary hearing before William F. Clark, Chief Hearing Examiner of the Department. Examiner Clark found that, while the Shanty Town property was in fact platted before June 1, 1977, the estimated additional flow of 30,000 gallons per day was far in excess of that permitted by Paragraph A of the consent order. Accordingly, he recommended that the appeal be denied.

The final administrative proceeding consisted of oral arguments before Kenneth E. McElroy, Jr., Designee of the Secretary of MDE. By written order dated January 15, 1988, Designee McElroy made the following findings relevant to this appeal: (1) that the language of the consent order, being clear and unambiguous, should be given its plain meaning without consideration of extrinsic evidence; (2) that Paragraph A is irrelevant because it applies only to undeveloped lots and, assuming the property constitutes a single lot, there had been commercial development since 1974; (3) that Paragraph C, rather, is dispositive in that its plain meaning dictates that no sewer service be provided for structures erected after 1982; (4) that the result would be the same even if the consent order were determined to be ambiguous; and (5) that the restrictive provisions of the consent order should be viewed not as six exceptions to some other overall policy, but rather as *the* policy, to be read as a cohesive whole. In accordance with these findings, MDE subsequently entered a final denial of Shanty Town's application.[4]

Shanty Town filed an appeal in the Circuit Court for Worcester County, where the case was assigned to Judge Theodore R. Eschenburg. On appeal, Shanty Town contended that the Designee's decision was erroneous because the plain meaning of the consent order does not preclude Shanty Town from obtaining the additional sewer service for which it applied. Upon reviewing the record, Judge Eschenburg rejected that argument, affirming the Designee's interpretation of the consent order on the ground that

---

4. Initially, this ruling was made contingent on the outcome of *Showell*, supra. In *Showell*, the Circuit Court for Worcester County had held that the Department lacked the authority to execute the consent order. On appeal, the Court of Appeals granted certiorari prior to consideration by this Court and had yet to rule at the time of Designee McElroy's Final Order of January 15, 1988. Accordingly, by its own terms the Order was stayed, to become effective thirty days after a decision in *Showell*. The Court of Appeals subsequently upheld the validity of the consent order by opinion dated June 2, 1989, thereby triggering final denial of the application by MDE.

substantial evidence supported the factual findings and there was no error of law. The sole issue before this Court is whether the Circuit Court was clearly erroneous in that holding.

The standard and scope of review by which the Circuit Court was bound is set forth in the Maryland Administrative Procedure Act, Code (1984) § 10–215 of the State Government Article. Under subsection (g)(3), a reviewing court may:

"reverse or modify the decision [of the agency] if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the agency;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious."

Under Maryland law, "substantial evidence" is such relevant evidence that a reasoning mind could accept as a proper basis for the conclusion reached by the agency. *Caucus v. Maryland Securities*, 320 Md. 313, 577 A.2d 783, (1990); *Maryland State Police v. Lindsey*, 318 Md. 325, 568 A.2d 29, (1990). A reviewing court must not substitute its own judgment for that of the agency, whose expertise is presumed, but rather exercise "restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions." *Caucus*, supra., 320 Md. at 324, 577 A.2d at 788 (quoting *Supervisor v. Asbury Methodist Home*, 313 Md. 614, 625, 547 A.2d 190, 195 (1988)). In *State Election Board v. Billhimer*, 314 Md. 46, 58, 548 A.2d 819 (1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989), the Court of Appeals elaborated upon

the degree of deference to be accorded a final agency decision:

This deference applies not only to agency fact finding, but to the drawing of inferences from the facts as well.... *When, however, the agency's decision is predicated solely on an error of law, no deference is appropriate and the reviewing court may substitute its judgment for that of the agency....*

■ Shanty Town contends that the Designee's interpretation of Paragraph C of the consent order is erroneous as a matter of law. We agree.

We hold, as did both the Designee and the Circuit Court below, that the language of the consent order is clear and unambiguous. Citing *Roged, Inc. v. Paglee,* 280 Md. 248, 372 A.2d 1059 (1977), where such is the case, all terms are to be given their plain meaning in construing the order.

Paragraph C is plain in its meaning. It neither precludes nor permits the relief sought by Shanty Town. The paragraph is geographically, not structurally, restrictive.

A specific detailed plan preceded the Agreement and the consent order so that the grant could be given for a system to service a known geographical area and known sewer usage. Paragraph C precludes service in the floodplain unless the area was included in the West Ocean City service area as of 1982. Recalling that the new system was intended to alleviate failing septic systems in a specific area, it was the obvious intent of the framers of the consent order to identify and restrict the geographical area the new system would serve. Read as a part of the entire order, there is nothing in the intent of the order to suggest that, in the converse, the intent of Paragraph C is to grant unlimited service to all structures within the described geographical area, as well as any future expansion to those structures. Paragraph C simply does not apply.

It is Paragraph A which applies. In light of the lengthy previous administrative and judicial controversies that have

been spawned by this situation,[5] we go further than simply addressing whether Paragraph C of the consent order applies in order to resolve the underlying dispute. Although it is undeniably desirable to exercise the judicial restraint set forth in Rule 8–131(a) in virtually all situations, we find the case *sub judice* to be an appropriate one in which to offer guidance to endeavor to avoid, if possible, the expense and delay of another appeal. *See Yarema v. Exxon Corp.,* 305 Md. 219, 503 A.2d 239 (1986); *Taub v. State,* 296 Md. 439, 463 A.2d 819 (1983).

Paragraph B precludes sewer service for structures in a wetland. Although the Hearing Examiner states that some portion of Shanty Town's 4.5± acres are in wetlands, there is no suggestion that its request was denied because any of the proposed structures were to be located in wetlands. Paragraph B is not applicable. We held earlier Paragraph C is a geographical limitation and that the appellant's property is inside its bounds; it is in the 100–year floodplain of the defined West Ocean City service area. Paragraph D's prohibition of a particular sewer line extension is inapplicable because the appellant's property is already served by an authorized sewer line. Paragraph E's restriction is inapplicable because the Shanty Town site is not industrially zoned. Paragraph F merely precludes service to structures located outside the defined geographical boundaries of the service area unless the agreement of the WCSC and the E.P.A. are obtained. With the exception of Paragraph A, the remainder of the consent order concerns itself with procedural requirements for the implementation of the policies.

It is Paragraph A which applies. The first sentence of Paragraph A prohibits any sewer service to undeveloped lots not platted as building lots prior to June 1, 1977. The parties agree that the entire Shanty Town property was platted as a single lot in 1922. Although, as the Hearing

---

5. *Shanty Town Associates Ltd. Partnership v. E.P.A.,* 843 F.2d 782 (4th Cir.1988); *Dept. of Environment v. Showell,* 316 Md. 259, 558 A.2d 391 (1989); and the administrative and judicial proceedings leading to these two decisions.

Examiner found, it is "unclear" as to whether the property was platted as a building lot, apparently for purposes of this appeal the parties concede that the property was platted as a building lot. Thus, the first sentence of Paragraph A does not prohibit the service requested by Shanty Town.

The plain meaning of the second sentence of Paragraph A, however, is to limit the additional sewer service Shanty Town seeks to the extent that it exceeds one EDU. Shanty Town concededly seeks sewer service for development on its platted lot; the second sentence of Paragraph A governs "development on a lot." That sentence specifically provides:

> Development on a lot for which sewer service will be permitted will be limited to one equivalent dwelling unit. (EDU)

Thus, Paragraph A specifically limits sewer service for "development" to one EDU per lot. There is nothing in this sentence which limits its impact to original development of previously undeveloped lots. Rather, unlike the first sentence of Paragraph A, it applies without qualification to "[d]evelopment on a lot for which sewer service will be permitted." Platted building lots which are being developed must share the allotment equally without regard to whether development is original or an expansion of existing development. Accordingly, Paragraph A may not be construed to grant the increase in sewer flow from 5,200 gallons to the 30,000 gallons which Shanty Town seeks. Rather, because it is undisputed that the Shanty Town property is at most a single building lot, its future additional allotment for development is limited to that provided by the second sentence of Paragraph A, i.e.; one EDU, of 280 gallons per day.

There is no necessity for this court to review the evidence heard by Designee McElroy to determine whether it was substantial and therefore could have supported the conclusion reached. The error made was an incorrect interpretation and application of Paragraph C of the consent order. Where the error made is one of law, the reviewing court,

under the provisions of Annotated Code of Md., State Government Art., § 10–215 (1984) may reverse or modify the decision of the agency for that reason alone. The erroneous application of Paragraph C of the consent order dictates that we reverse and remand.

REVERSED AND REMANDED TO THE CIRCUIT COURT FOR WORCESTER COUNTY FOR FURTHER REMAND TO THE SECRETARY OF THE MARYLAND DEPARTMENT OF THE ENVIRONMENT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS ORDER. COSTS ARE TO BE PAID BY THE APPELLEE.

CATHELL, Judge, concurring and dissenting.

I concur with the majority's bottom line holding that "Paragraph C simply does not apply." My concurrence is based on the fact that the issues arising out of Paragraph C have been appealed to us.

I respectfully do not agree with the majority's decision to opine that "[i]t is Paragraph A which applies." I also disagree with the majority's addressing the issue it refers to when it states "Paragraph A may not be construed to grant the increase in sewer flow from 5,200 gallons to the 30,000 gallons which Shanty Town seeks." My dissent is based on the fact that, in this appeal from the actions of an administrative agency, the interpretation and applicability of Paragraph A were not appealed to us nor to the trial court. The applicability of Paragraph A was not litigated in the trial court because the agency had determined that it was not applicable to the Shanty Town property—a position with which the appellant concurred. It, for the same reason, was not raised or argued before us.

I am aware that the roles of the majority and the dissenter diverge when an appellate judge deems it important to express a differing opinion. As Benjamin Cardozo stated, in *Law and Literature* at 34 (1931):

Comparatively speaking at least, the dissenter is irresponsible. The spokesman of the court is cautious, timid,

fearful of the vivid word, the heightened phrase. He dreams of an unworthy brood of scions, the spawn of careless *dicta*, disowned by the *ratio decidendi*, to which all legitimate offspring must be able to trace their lineage. The result is to cramp and paralyze. One fears to say anything when the peril of misunderstanding puts a warning finger to the lips. Not so, however, the dissenter. He has laid aside the role of the hierophant, which he will be only too glad to resume when the chances of war make him again the spokesman of the majority. For the moment, *he is the gladiator making a last stand against the lions. The poor man must be forgiven a freedom of expression, tinged at rare moments with a touch of bitterness . . . .* [Emphasis added.]

The majority cites *Yarema v. Exxon Corp.*, 305 Md. 219, 503 A.2d 239 (1986), and *Taub v. State*, 296 Md. 439, 463 A.2d 819 (1983), as support for its position that judicial restraint in the present case is undesirable and that it is appropriate to offer guidance in order to avoid, if possible, the expense and delay of another appeal. In my view, neither case supports the position taken by the majority in the case at bar. The Court of Appeals, in *Yarema*, considered the timeliness of the appeal even though timeliness was not included in the questions presented in the certiorari petition. In doing so, however, the Court of Appeals noted that "both sides have also argued the question of whether or not the January 24, 1984, order of appeal . . . was untimely because of late filing." *Yarema*, 305 Md. at 231, 503 A.2d 239. Additionally, the Court of Appeals only dealt with the issue because it "directly relates to . . . appellate jurisdiction. . . ." *Id.* In the case *sub judice*, neither party argued the issue on which the majority now offers guidance, in the nature of a directive.

*Taub* was a criminal case that involved a matter of statutory construction. The Court of Appeals discussed virtually the entire legislative history of the statute in order to determine its meaning or intent. *Taub*, 296 Md. at 442–44, 463 A.2d 819. It ultimately determined, by reliance on

the legislative history, that the statute was not intended to apply to *Taub. Id.* at 444, 463 A.2d 819. The case at bar does not involve the construction of a statute but the construction of a section of an agreement that has heretofore been determined by all parties to the case not to apply. The majority's opinion mandates a construction of Paragraph A sought by neither party. Additionally, there is before this Court, little history or evidence relating to the *making* of this agreement by the parties.

Finally, as I read both *Yarema* and *Taub,* in neither case did the appellate court reverse the decision of the trial court and simultaneously direct the trial court to remand to an administrative agency for further proceedings. In *Yarema,* they vacated the trial court judgment, 305 Md. at 242, 503 A.2d 239; in *Taub,* they reversed and ordered the indictment to be dismissed. 296 Md. at 445, 463 A.2d 819.

*Taub* cites several cases. A review of those cases indicates that they are factually inapposite to the present case. *Squire v. State,* 280 Md. 132, 368 A.2d 1019 (1977), involved the appellate court considering plain error in omitting jury instructions even though not objected to below. The Court, quoting from an earlier case authored by Judge Eldridge, said "an appellate court may ... in an exceptional case take cognizance of plain error...." *Squire,* 280 Md. at 135, 368 A.2d 1019 (quoting *Dempsey v. State,* 277 Md. 134, 142, 355 A.2d 455 (1976)). The exceptional circumstance was that the opinion in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), which mandated the omitted instructions, was rendered only four days before the trial in *Squire* and not fully explained until later in *State v. Grady,* 276 Md. 178, 345 A.2d 436 (1975), and *Evans v. State,* 28 Md.App. 640, 349 A.2d 300 (1975), *aff'd,* 278 Md. 197, 362 A.2d 629 (1976). A careful reading of *Squire* strongly indicates that the issues resolved by the appellate court, though not raised below, were at least raised on appeal. In the instant case, Paragraph A was not raised in the trial court or in the appellate court.

*Bartholomey v. State,* 260 Md. 504, 273 A.2d 164 (1971), *vacated in part and remanded on other grounds,* 408 U.S. 938, 92 S.Ct. 2870, 33 L.Ed.2d 759 (1972), *reh'g denied,* 409 U.S. 901, 93 S.Ct. 180, 34 L.Ed.2d 162 (1972), was a death penalty case and the death penalty aspect was the exceptional circumstance which caused the Court of Appeals to consider the questions not raised below on appeal. Even then, unlike the case at bar, the issues were raised on appeal. The other case cited in *Taub* was *Martin G. Imbach, Inc. v. Deegan,* 208 Md. 115, 117 A.2d 864 (1955). In *Imbach,* the question decided had been raised below by demurrer but the trial judge declined to decide it. The Court of Appeals, after restating the rule, declared that certain cases were outside the scope of the rule and could be decided on appeal, though not *decided* below. *Id.* at 131, 117 A.2d 864. It then stated that among those cases were those presented on demurrer. *Id.* Again, in *Imbach,* the question decided not only had been raised (though not decided) below, but had also been raised on appeal.

The only additional basis upon which the majority might have grounded its willingness to opine for the first time on appeal as to the meaning and applicability of Paragraph A is the holding of *Robeson v. State,* 285 Md. 498, 403 A.2d 1221 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980), its ancestral precedents and its progeny. In confirming and reasserting that under certain circumstances an appellate court may address an issue not relied upon below, the *Robeson* Court said:

> It is true ... as a general principal, that an appellate court will not ordinarily consider an issue that has not previously been raised.... However, there are well-recognized exceptions to this general principle. One exception is that where the record in a case adequately demonstrates that the decision of the trial court was correct, although on a ground not relied upon by the trial court and perhaps not even raised by the parties.... [Citations omitted.]

285 Md. at 501–02, 403 A.2d 1221. There was, in *Robeson*, ample evidence before the trial and appellate court upon which harmless error could be found. Additionally, the harmless error principal is generally an issue raised for the first time on appeal—it is peculiarly unique to the appellate assessment of the damage created by trial court error. In the case at bar, the majority for the first time on appeal, in my view, addresses an issue peculiarly suited for initial administrative interpretation and initial trial court review.

In *Robeson* and the cases upon which it relied, and those since that rely on it, there have been two unchanging factors: first, the record of the case has always substantially supported the position taken by the appellate court, and, second, the appellate court is almost always affirming the trial court. In my view, in the instant case, neither factor exists. *See Henley v. Prince George's County*, 305 Md. 320, 333, 503 A.2d 1333 (1986); *McCray v. State*, 305 Md. 126, 135–36, 501 A.2d 856 (1985); *Webster v. State*, 299 Md. 581, 610, 474 A.2d 1305 (1984); *Grant v. State*, 299 Md. 47, 53, 472 A.2d 459 (1984); *Joseph H. Munson Co. v. Secretary of State*, 294 Md. 160, 167–68, 448 A.2d 935 (1982), *aff'd*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984); *Coffey v. Derby Steel Co.*, 291 Md. 241, 256, 434 A.2d 564 (1981); *Health Services Cost Review Comm'n v. Holy Cross Hosp., Inc.*, 290 Md. 508, 515, 431 A.2d 641 (1981); *Neville v. State*, 290 Md. 364, 368, 430 A.2d 570 (1981); *Temoney v. State*, 290 Md. 251, 429 A.2d 1018 (1981); *DuBois v. City of College Park*, 286 Md. 677, 683, 410 A.2d 577 *cert. denied*, 459 U.S. 1146, 103 S.Ct. 787, 74 L.Ed.2d 993 (1983);[1] *Aubinoe v. Lewis*, 250 Md. 645, 649, 244 A.2d 879 (1968); *Read Drug and Chemical Co. v. Colwill Constr. Co.*, 250 Md. 406, 423, 243 A.2d 548 (1967); *Eaton v. Rosewood Center*, 86 Md.App. 366, 373, 586 A.2d 804 (1991); *Walton v. Davy*, 86 Md.App. 275, 284, 586 A.2d 760 (1991); *Faulkner v. American Casualty Co.*, 85 Md.App.

---

1. *Dubois* and *Eaton, infra,* were the exceptions to the general situation where the trial court is being affirmed under the *Robeson* holding.

595, 629, 584 A.2d 734 (1991); *Hansford v. District of Columbia,* 84 Md.App. 301, 309, 578 A.2d 844 (1990), *cert. granted,* 321 Md. 709, 584 A.2d 708 (1991); *Burwell v. Easton Memorial Hosp.,* 83 Md.App. 684, 691–92, 577 A.2d 394 (1990); *Joiner v. State,* 82 Md.App. 282, 293, 571 A.2d 844 *cert. granted,* 320 Md. 312, 577 A.2d 362 (1990); *Clark v. State,* 80 Md.App. 405, 411–12, 564 A.2d 90 (1989); *Ellett v. Giant Food, Inc.,* 66 Md.App. 695, 505 A.2d 888 (1986); *Newman v. State,* 65 Md.App. 85, 93, 499 A.2d 492 (1985), *cert. denied,* 305 Md. 419, 504 A.2d 1152 (1986).

We were, in part, reversed by the Court of Appeals in *Henley* in respect to our holding that the lack of evidence supported our ruling on proximate cause. The Court of Appeals said that the "effect of our ruling [this court's ruling based on *Robeson* ] on the issue of proximate cause, or on any other issue not considered by the trial judge, would be to deprive the trial judge of discretion to deny or defer until trial on the merits the entry of judgment on such issues." *Henley,* 305 Md. at 333, 503 A.2d 1333.

By summarily embracing Paragraph A, and gratuitously opining as to its meaning, the Court is denying to the parties, both of whom agree it does not apply, any opportunity to present to the trial court evidence supporting their position. There was no dispute below between the parties that Paragraph A did not apply. There was none here— until the majority rendered its *ipso facto* holding. There is no doubt, of course, that the agency which just recently rejected the enticements of Paragraph A will now be seduced by its beguilements. Additionally, and as importantly, the majority in its preemptive holding is not determining that the trial court abused its discretion as to Paragraph A but is denying to that court *any opportunity* to exercise its discretion in the first instance. In most, if not all, cases I have referred to, the trial court at least had that opportunity.

The allure to the majority of Paragraph A's language, may well conceal (because it was not fully litigated at the trial court) the real relationship of the parties when such

environmental *consent* orders are dictatorially imposed.[2] In essence, in these "environmental" confrontations, the local authorities are attempting to retain as much control over local development as possible. The environmental agencies are attempting to limit that local control as much as possible. The local authorities reluctantly concede the minimum necessary to achieve that which is desired, *i.e.*, the sewer grant. The environmental agencies grasp the maximum possible before giving up that which is desired, *i.e.*, the sewer grants.

It is in that "environment" that these "consent" orders or "agreements" are made. In this case, the expert (the agency) and the party (Shanty Town) conceded that Paragraph A did not apply.[3] They did not, and have not yet, litigated the issue of applicability. The majority, nevertheless, determines that it applies, and further, what it means. In the circumstances of the making of such consent agreements in the administrative context, I question the assumption, under *Yarema, Taub* and *Robeson,* or any other authority, of the right to make the initial determination of the *applicability* or *meaning* of a consent provision. It seems only proper to me to afford to the parties a full opportunity to litigate the issue in a more appropriate forum—the trial court or the agency. In the process, that which is lacking in the record before us may be furnished.

I conclude by noting that, in my perception, the majority extends the *Yarema* and *Robeson* holdings past where they

---

**2.** I acknowledge that the record before us does not adequately form the basis for these final conclusions I make in dissent. That failure of the record results from the failure of this matter to be litigated. As I dissent, because of the failure of the record to support the position taken by the majority, I see no inconsistency in conjecturally relying on what might have been, had the majority not foreclosed the future making of that record.

**3.** When an environmental agency and a developer agree on anything, it seems, especially in the political environment in which agencies and developers contend, that a court stretches reasonableness when it, without being requested to do so by anybody, in essence, orders them to disagree.

have heretofore been, especially in regards to administrative appeals. It is, I respectfully proffer, simply inappropriate, under the circumstances of this case, to make such determinations for the first time on appeal. In doing so, the majority presents the appellee with a case it neither sought below, supported below, relied on below, or won below.[4] As the Court said in *Berman v. Karvounis*, 308 Md. 259, 263, 518 A.2d 726 (1987), "The judge was not right for the wrong reason; he was wrong." I would simply reverse.

---

**4.** "If it be not, I am sure none of us [judges] ought to make the parties['] case better than the law has made it." Sommers, L.K., *The Bankers' Case*, 14 How.St.Tr. 39, 45 (1700).