771 A.2d 521

**Brian James MODECKI**

v.

**STATE of Maryland.**

No. 974, Sept. Term, 2000.

Court of Special Appeals of Maryland.

April 30, 2001.

Geraldine K. Sweeney, Assistant Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Shannon E. Avery, Assistant Attorney General (J. Joseph Curran, J., Attorney General, Baltimore and Sandra A. O'Connor, State's Attorney for Baltimore County, Towson, on the brief), for appellee.

Before JAMES R. EYLER, KRAUSER, and THEODORE G. BLOOM (Retired, specially assigned), JJ.

THEODORE G. BLOOM, Judge, Specially Assigned.

Appellant, Brian James Modecki, was convicted at a bench trial in the Circuit Court for Baltimore County (Cahill, J., presiding) of possession of cocaine with intent to distribute and possession of cocaine. The court merged the simple possession conviction into the conviction for possession with intent to distribute, and sentenced appellant, as a subsequent offender, to a term of ten years without the possibility of parole. Appellant was also charged with possession of marijuana, but found not guilty of that offense.

The sole question presented by appellant in this appeal is: "Did the motions judge err in denying appellant's motion to suppress where the State failed to prove that appellant's warrantless arrest was supported by probable cause?"

At the suppression hearing, the evidence disclosed that, during the execution of a search warrant, the police arrested an occupant of the searched premises who had sold drugs to an undercover officer, Detective Keith Williams, five or six times over a period of one to two months. Detective Williams entered into an agreement with the drug dealer, foregoing to arrest the drug dealer's friend, who was on the searched premises when the warrant was executed, if the drug dealer would cooperate with the police. Detective Williams testified that the drug dealer, who was not identified at the suppression hearing, had no track record as a confidential informant; had never made a "controlled buy"; had theretofore never provided information that led to an arrest; and was not registered as a confidential informant.

The drug dealer told Detective Williams that he could arrange a buy from a person known to him as "D," who lived at 1004C Wilson Point Road. "D" was David Lingerfelt, appellant's co-defendant. Detective Williams also testified that the police had received prior anonymous telephone "tips" regarding the house on Wilson Point Road. One tip was that two

white males, known to the anonymous caller or callers as "Mo" and "Dave," were dealing drugs from that address. "Dave" was described as a heavyset white male who lived at that address and who was reportedly selling drugs at a corner near the house. "Mo" (appellant) was described as a white male of "medium" build, early 20's, with short hair. Another tip advised the police that "Mo" and "Dave" dealt drugs from the residence and that they hid the drugs in the bushes in front of the house or in the wooded area next to the house.

The dealer/informant telephoned a person at the house and arranged a purchase of one ounce of crack cocaine, to be picked up twenty minutes later at a particular location. A surveillance of the Wilson Point Road house was established, and the police observed a heavy set man come out of the house and go to the bushes in front of the house for a few seconds. He returned to the house and then, a minute or two later, came out of it and again went to the bushes for a few seconds before returning to the house. A short time later, a younger man of medium build arrived and entered the house. Both men left the house, went through the wooded area, and got into a waiting minivan, which was driven by Jennifer McCready. She drove the van in the direction of the prearranged place for the drug purchase. Detective Williams radioed Officer Tammy Beam, a uniformed officer in a marked police car, to follow the van. Officer Beam reported by radio that one of the van's taillights was out. Detective Williams directed her to initiate a traffic stop, which she did. Before the van stopped, Officer Beam reported that she "saw an arm go out the window." After the van stopped, four or five police cars converged on the scene. The three occupants of the van were removed from the vehicle and patted down. Lingerfelt had in his possession $1,922 in cash. McCready told the police that appellant had thrown something out of the window. The police handcuffed appellant and Lingerfelt and placed them in the back of a patrol vehicle. The police searched the area along the roadway where appellant had thrown an object out of the van. They found a bag of suspected crack cocaine, and then appellant and Lingerfelt were "formally" arrested.

At trial, Detective Williams and several other officers related the events as recounted at the suppression hearing. The State also introduced evidence that the police had gone back to the house and found near the bushes an empty hole (approximately six inches square) completely covered by the splash guard of the downspout. The drugs recovered were analyzed. Including the drugs found outside the house, the drugs thrown away by appellant, and 7.9 grams of crack cocaine recovered from Lingerfelt pursuant to a body cavity search at the station house, the total amount of drugs seized was 32.5 grams of crack cocaine having an estimated street value of between $1,200 and $6,000.

▌ Appellant now claims that it was error to deny his motion to suppress evidence allegedly obtained as the result of an illegal detention. He specifically contends that the eventual discovery of his identity was the fruit of such illegal detention. That contention, however, was never raised at the suppression motion hearing. What appellant moved to suppress was cocaine and marijuana allegedly seized illegally as a result of an unlawful warrantless arrest. He does not contend, in this appeal, that the suppression motion hearing judge erred in refusing to suppress the cocaine that was admitted in evidence that was used to convict him. He had abandoned that cocaine by throwing it out of the van's window after Officer Beam signaled to Ms. McCready to stop her vehicle. It is well settled that, when a defendant intentionally "abandons" his rights in or to property or a specific area, the constitutional protection against unreasonable searches and seizures does not apply. *Stanberry v. State*, 343 Md. 720, 731, 684 A.2d 823 (1996), *cert. denied*, 520 U.S. 1210, 117 S.Ct. 1692, 137 L.Ed.2d 819 (1997). Nor does he contend in this appeal that the suppression motion hearing judge erred in refusing to suppress the marijuana that Ms. McCready told the police she had given to him and that he was also accused of possessing. He was acquitted of that charge.

Maryland Rule 8–131(a) provides:

The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

 The word "ordinarily" permits exceptions, and occasionally issues are addressed on appeal that were not previously raised. *See, for example, Crown Oil and Wax Company of Delaware v. Glen Construction Company of Virginia, Inc.,* 320 Md. 546, 578 A.2d 1184 (1990); *Taub v. State,* 296 Md. 439, 441–42, 463 A.2d 819 (1983), and cases therein cited. We choose to address the issue of illegal seizure of identity now raised by appellant because that issue has not heretofore been addressed by the Court of Appeals or this Court and there are apparently conflicting decisions on the issue in other jurisdictions, and "[b]ecause our conclusion as to this issue is completely dispositive of the case." *Taub,* 296 Md. at 442, 463 A.2d 819.

Appellant asserts that, because he was a passenger in a motor vehicle that was stopped for a minor vehicle offense, he had a legal right to walk away from the scene without hinderance by the police. *Dennis v. State,* 345 Md. 649, 693 A.2d 1150 (1997). The driver of the van could lawfully have been detained for as long as it took to process the traffic violation, *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), and the police, based on their own observations, together with the information received from the drug dealer/informer and anonymous callers, may have had probable cause to detain David Lingerfelt. But, he contends, the dealer/informant had not telephoned *him* to arrange a drug buy, the police had not observed him doing anything illegal, and his identity, discovered as a result of his illegal seizure by the police, was fruit of a poisonous tree.

The State, countering appellant's contention, argues that the police had probable cause to arrest appellant or, at least, had sufficient articulable bases of suspicion to detain him while looking for and recovering the cocaine he jettisoned.

Appellant's contention is that the "fruit" of what he insists was an illegal arrest was his "person and the discovery of his identity," something the police would otherwise not have been aware of. He relies on the case of *Zimmerman v. Commonwealth*, 234 Va. 609, 363 S.E.2d 708 (1988). In that case, a police officer observed an automobile driven in a normal lawful way by a woman, with a man riding as a passenger in the front right seat. The automobile stopped, and the man got out of the car and approached the officer to ask directions. The officer gave the man directions to his stated destination, and the man walked back to the car and got behind the wheel. The woman who had been driving moved over into the passenger seat. The officer, curious, followed the car and then stopped it merely to ask the occupants for identification. The woman, Ms. Zimmerman, identified herself. A radio check by the officer disclosed that Ms. Zimmerman had been declared to be a "habitual offender." The operation of an automobile by one so declared is a criminal offense in Virginia, and Ms. Zimmerman was charged with and convicted of that offense. The Supreme Court of Virginia reversed her conviction, holding that the officer had no lawful right to stop the vehicle and that the evidence used to convict Ms. Zimmerman, *viz,* her identity as a habitual offender, was the fruit of the unlawful police conduct.

The court in *Zimmerman* distinguished the case before it from, and declined to follow, *United States v. Arias*, 678 F.2d 1202 (4th Cir.), *cert. denied*, 459 U.S. 910, 103 S.Ct. 218, 74 L.Ed.2d 173 (1982), which counsel for the Commonwealth insisted was persuasive authority. In *Arias*, the defendant contended that a vehicle in which he was riding was illegally stopped and searched without probable cause. Although no contraband was found on the defendant or in the vehicle, the police learned the defendant's identity, and that information led to further information that this defendant had been aboard

an airplane that had recently landed at a small airport in the vicinity. The airplane contained a large quantity of quaaludes, a controlled dangerous substance. The court ruled that it was not necessary for it to determine whether the stop of the vehicle was lawful, because a person's identity is not suppressible under the exclusionary rule, citing *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).

In *Crews*, victims of robberies gave the police a description of the robber. Crews, whose appearance matched the description given by the victims, was seized and taken to police headquarters, where he was photographed and released. The photograph of Crews was placed in a photographic array shown to the robbery victims, who identified Crews's picture as that of the man who had robbed them. Crews was then arrested and placed in a police line up, where the victims again identified him as their assailant. At trial, Crews was identified in court as the man who had robbed the victims. The Supreme Court held that the in-court identification was not tainted by the illegal arrest. Responding to Crews's complaint that, but for the unlawful arrest, the victims would not have had the opportunity to identify him, the Court (Brennan, J.) said:

> In so far as respondent challenges his own presence at trial, he cannot claim immunity from prosecution simply because his presence in court was precipitated by an illegal arrest. An illegal arrest, without more, has never been viewed as a bar to prosecution or a defense to a valid conviction.

445 U.S. at 474, 100 S.Ct. 1244.

As for Crew's argument that the discovery of his identity was the fruit of unlawful police conduct, suppressible under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Court said:

> Respondent himself is not a suppressible "fruit," and the illegality of his detection cannot deprive the government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct.

*Id.* In a concurring opinion, Justice Powell (joined by Justice Blackmun) explicitly rejected the claim that a defendant's face can be suppressible fruit of an illegal arrest. *Id.* at 477, 83 S.Ct. 407. To the same effect is the concurring opinion of Justice White, in which Chief Justice Berger and Justice Rehnquist joined. 445 U.S. at 477–79, 100 S.Ct. 1244.

We adopt the reasoning of *Crews* and *Arias,* and to the extent that there is any conflict between those cases and *Zimmerman v. Commonwealth,* we reject the latter as lacking persuasive authority. In accordance with Justice Brennan's opinion in *Crews,* we hereby hold that neither appellant's person nor his identity was a "fruit" of his detention that would be subject to suppression even if that detention was unlawful. Consequently, we decline to address the issue as to whether the seizure and detention of appellant, immediately after the van in which he was riding was stopped for a minor traffic violation, was lawful or unlawful. The evidence used to convict him was wholly untainted by that seizure and detention.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**